UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID LONICH, SEAN CUTTING, and BRIAN MELLAND,<br><br>Defendants. | Case No. 14-cr-00139-SI-1<br><br>**ORDER RE: MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 98, 99, 100, 101, 103, 104, 105, 106 |

On January 22, 2016, the Court held a hearing on defendants' motions to dismiss or strike the indictment, or in the alternative, for a bill of particulars. For the reasons set forth below, the Court hereby DENIES defendant Lonich's motion to dismiss Counts 1-22 of the indictment; DENIES defendant Lonich's motion to dismiss Count 29 but GRANTS the alternative motion to strike the surplusage "among other things" from that count; GRANTS defendant Lonich's motion to strike the surplusage "and others" from the prefatory allegations and from Counts 1 and 3-8; GRANTS defendant Lonich's motion to dismiss Counts 1-8 to the extent those counts allege an omissions theory of fraud; DENIES defendant Melland's motion to dismiss Counts 1-23; and DENIES defendant Cutting's motion to dismiss Counts 11-14.

**BACKGROUND**

On March 18, 2014, the government filed a twenty-nine count indictment against defendants David Lonich, Brian Melland and Sean Cutting.[1] Melland, Cutting and Lonich are charged with conspiracy to commit wire and bank fraud in violation of 18 U.S.C § 1349 (Count

---

[1] Bijan Madjilessi was originally charged in the indictment with the other defendants. Madjilessi died after the indictment and by operation of law all charges against him were dismissed.

One), bank fraud in violation of 18 U.S.C. § 1344 (Count Two), wire fraud in violation of 18 U.S.C. § 1343 (Counts Three through Eight), conspiracy to make false statements to a bank in violation of 18 U.S.C. § 371 (Count Nine), conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h) (Count Ten), and money laundering in violation of 18 U.S.C. § 1957 (Counts Eleven through Twenty-Two). Melland and Cutting are charged with conspiracy to misapply bank funds in violation of 18 U.S.C. § 371 (Count Twenty-Three). Cutting and Lonich are charged with making false bank entries in violation of 18 U.S.C. § 1005 (Counts Twenty-Four through Twenty-Eight), and Lonich alone is charged with attempted obstruction of justice in violation of 18 U.S.C. § 1512 (Count Twenty-Nine). Madjlessi was a real estate developer, Lonich was Madjlessi's attorney, Cutting was President and CEO of Sonoma Valley Bank until it failed in August 2010, and Melland was the Senior Vice President and Chief Loan Officer of Sonoma Valley Bank until March 2010.[2]

The following facts are alleged in the indictment. "No later than approximately March 2009 until approximately September 2012, the defendants devised and executed a material scheme to defraud Sonoma Valley Bank and others and to obtain money from Sonoma Valley Bank and others by means of materially false and fraudulent pretenses, representations, and promises and by omissions and concealment of material facts." Indictment ¶ 7. In or around April 2008, Madjlessi defaulted on an IndyMac Bank loan of more than $30,000,000 that he had personally guaranteed and that had been used to fund construction of a condominium project called the Park Lane Villas ("PLV") East. *Id*. ¶ 8. In May 2008, IndyMac Bank filed a civil lawsuit seeking recovery of the loan proceeds. *Id*. By July 2008, IndyMac Bank had failed. *Id*. The FDIC took over as Receiver and decided to auction the loan through a contractor, The Debt Exchange, also known as DebtX. *Id*.

---

[2] According to the indictment, Sonoma Valley Bank was a bank based in Sonoma County, California, which failed in or about August 2010. Until it failed, it was insured by the Federal Deposit Insurance Corporation ("FDIC") and was a member of the Federal Home Loan Bank of San Francisco. Sonoma Valley Bank received $8.65 million in funds from the Troubled Asset Relief Program ("TARP") and failed to pay all of the required dividends on that investment. After Sonoma Valley Bank failed, it did not repay the funds it had received from TARP. When it failed, Sonoma Valley Bank had multiple outstanding loans to Madjlessi and his associated entities, including a loan related to the Park Lane Villas project.

Madjlessi, Melland, Cutting and Lonich conspired to have Madjlessi bid on and obtain this defaulted loan contrary to FDIC regulations and through a straw borrower, J.H. *Id*. ¶ 89 In March 2009, Lonich created an entity called 101 Houseco, and installed J.H. as its nominal owner. *Id*. ¶ 10. In fact, J.H. was a straw buyer who exercised no meaningful control of 101 Houseco; instead, Madjlessi and Lonich exerted control over the company. *Id*. In March 2009, J.H. signed a document effectively assigning his ownership interest in 101 Houseco to Madjlessi's daughter at any time upon her signature. *Id*.

To fund the bid for the defaulted IndyMac loan, Madjlessi approached Sonoma Valley Bank executives Melland and Cutting seeking a loan for 101 Houseco. *Id*. ¶ 11. Melland and Cutting knew that 101 Houseco was a straw purchaser, and they took steps to authorize that loan, which was initially disbursed to 101 Houseco in March 2009. *Id*. Between March 2009 and November 2009, with Melland and Cutting's assistance, the loan balance to 101 Houseco increased from an initial balance of less than $5,500,000 to a final balance of almost $9,500,000. *Id*. Of the final balance, more than $4,000,000 was used to purchase Madjlessi's defaulted IndyMac loan through DebtX and more than $4,500,000 went to Masma Construction, a company controlled by Madjlessi. *Id*. "In or about January 2010, MADJLESSI and LONICH, utilizing J.H., caused 101 Houseco to settle the pending civil suit relating to that loan with MADJLESSI, foreclose on PLV East, and obtain title to the project." *Id*. ¶ 12.

In order to obtain Freddie Mac refinancing, between approximately 2009 and 2011, Madjlessi, Lonich, and Cutting took steps to purchase PLV East units that had been sold as residential condominiums prior to the start of this scheme and then transfer them to 101 Houseco so that the residential portion of PL V East could be converted to an apartment complex. *Id*. ¶ 13. Madjlessi and Lonich helped accomplish these purchases by fraudulently utilizing straw purchasers and by obtaining a loan from a New York-based firm for 101 Houseco by fraudulently utilizing J.H. as a straw borrower. *Id*. Cutting helped accomplish the purchases by issuing letters on Sonoma Valley Bank letterhead falsely stating that potential buyers had sufficient funds available at Sonoma Valley Bank for purchase. *Id*. In or about September 2012, Madjlessi and Lonich obtained refinancing on the PLV East from Freddie Mac. *Id*. ¶ 14.

The indictment alleges that in furtherance of their scheme, the defendants made material misrepresentations, and omitted and concealed material facts, including the following: (1) Madjlessi, Lonich, Cutting, and Melland falsely claimed to Sonoma Valley Bank that J.H. was the borrower behind 101 Houseco for a loan it sought, knowing that Madjlessi and Lonich were the true borrowers as the individuals in actual control of 101 Houseco; (2) Cutting and Melland recommended to Sonoma Valley Bank's loan committee that it should make the loan to 101 Houseco without disclosing their knowledge that approving the loan would likely violate the bank's legal lending limit to Madjlessi and his related entities; (3) Lonich falsely claimed to a DebtX representative that J.H. was the bidder as 101 Houseco for Madjlessi's defaulted IndyMac loan, knowing that Madjlessi and Lonich were the true bidders as the individuals in actual control of 101 Houseco; (4) Cutting, using Sonoma Valley Bank letterhead, falsely claimed in letters intended for sellers of PLV East Condominiums that potential buyers had assets at Sonoma Valley Bank that they did not, while Madjlessi and Lonich falsely claimed that potential buyers were individuals when in fact they were straws used by 101 Houseco to regain control of all PLV East units; (5) Madjlessi and Lonich falsely claimed to a New York-based firm that J.H. was the borrower behind 101 Houseco for a loan it sought, knowing that Madjlessi and Lonich were the true borrowers as the individuals in actual control of 101 Houseco; and (6) Madjlessi and Lonich, while negotiating and obtaining refinancing for PLV East, omitted the material fact 101 Houseco and this scheme were the subjects of a criminal investigation and falsely claimed that Madjlessi was unaffiliated with 101 Houseco. *Id.* ¶ 15.

Now before the Court are motions to dismiss the indictment filed by defendants Lonich, Cutting and Melland. In the alternative, defendants seek a bill of particulars. Each defendant has joined in the motions filed by the other defendants.

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 7(c) provides that an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." In the Ninth Circuit, an indictment is usually sufficient if it sets forth the elements of the offenses

4

charged. *United States v. Fernandez*, 388 F.3d 1199, 1200 (9th Cir. 2004); *see also United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) ("In the Ninth Circuit the use of a 'bare bones' information—that is one employing the statutory language alone—is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished." (alteration, citation, and internal quotation marks omitted)). In considering a motion to dismiss an indictment, the Court may not look beyond "the four corners of the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). An indictment is sufficient to withstand a defendant's motion to dismiss "if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge." *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (citation omitted).

## DISCUSSION

I. **Defendant Lonich's motion to dismiss Counts 1-22 for failure to state an offense (Dkt. 98)**

Counts 1 through 22 charge defendants with bank fraud, wire fraud, conspiracy to make false statements to a bank, money laundering, and conspiracy to commit wire and bank fraud. Lonich moves to dismiss these claims for failure to state an offense. Defendant Lonich argues that these counts should be dismissed because the indictment alleges that Sonoma Valley Bank executives Cutting and Melland knew the material facts allegedly misrepresented and/or omitted, but the government does not allege that Cutting and Melland acted outside of the scope of their authority with respect to the 101 Houseco loan, or that Lonich knew or intended to defraud Sonoma Valley Bank. Lonich argues that the indictment fails to state an offense because it is well-established that "the knowledge of a corporate officer within the scope of his employment is the knowledge of the corporation." *Bank of New York v. Fremont General Corp.*, 523 F.3d 902, 911 (9th Cir. 2008) (internal quotation marks omitted). Lonich argues that, therefore, all

information known to Cutting and Melland was, as a matter of law, imputed to Sonoma Valley Bank, and thus Sonoma Valley Bank cannot have been defrauded, deceived or lied to, absent an allegation that Cutting and Melland acted outside the scope of their employment with respect to the 101 Houseco loans, and absent an allegation that Lonich knew about or intended any such misconduct.

Lonich does not cite any authority holding that an indictment must contain such allegations in order to state a claim for bank fraud. *Cf. Olmstead v. United States*, 29 F.3d 239, 242 (9th Cir. 1928) (holding, in case charging misapplication of bank funds under 18 U.S.C. § 656, that "[n]or was it necessary to aver that in misapplying the funds of the bank [the defendant] acted without the knowledge or consent of the directors."). Instead, the cases Lonich cites address the sufficiency of evidence in civil and criminal cases involving bank fraud. *See Bank of New York*, 523 F.3d at 911(on review after summary judgment and bench trial; holding there was evidence from which a trier of fact could conclude that corporation intentionally caused transfer of funds based on actions of corporate officer). Further, these cases hold that "[d]isclosure to bank officers is not a complete defense to bank fraud; '[i]t is the financial institution itself—not its officers or agents—that is the victim of the fraud the statute proscribes.'" *United States v. Ripinksy*, 109 F.3d 1436, 1440, 1440 (9th Cir. 1997), *overruled in part on other grounds by United States v. Sablan*, 114 F.3d 913 (9th Cir. 1977) (en banc) (*quoting United States v. Molinaro*, 11 F.3d 853, 857 (9th Cir.1993)); *see also United States v. Unruh*, 855 F.2d 1363, 1368 (9th Cir.1987) ("[The board's] knowledge, ratification, and consent are not per se defenses to the charge [of misapplication of bank funds]. Instead these are evidentiary matters that may be considered as part of the defense that there was either no willful misapplication or no intent to injure the bank.").

Lonich also contends that the indictment fails to state an offense because it fails to allege facts to support a conclusion that J.H. was a straw purchaser rather than the true owner. Lonich argues that the indictment's "straw" allegations are framed in terms of control – that 101 Houseco was controlled by Madjlessi and Lonich, rather than J.H. – but that what matters is ownership, not control.

The Court disagrees. The indictment alleges that in "March 2009, J.H. signed a document

effectively assigning his ownership interest in 101 Houseco to MADJLESSI's daughter any time upon her signature." Indictment ¶ 10.  Further, the indictment alleges "MADJLESSI, LONICH, CUTTING, and MELLAND falsely claimed to Sonoma Valley Bank that J.H. was the borrower behind 101 Houseco for a loan it sought, knowing that MADJLESSI and LONICH were the true borrowers as the individuals in actual control of 101 Houseco;" and that "CUTTING and MELLAND recommended to Sonoma Valley Bank's loan committee that it should make the loan to 101 Houseco without disclosing their knowledge that approving the loan would likely violate the bank's legal lending limit to MADJLESSI and his related entities." *Id*. ¶ 15(a)-(b). The Indictment also alleges that "Of the final [loan] balance, more than $4,000,000 was used to purchase MADJLESSI's defaulted IndyMac loan through DebtX and more than $4,500,000 went to Masma Construction, a company controlled by MADJLESSI." *Id*. ¶ 11.  These allegations are sufficient to state an offense. *Cf. United States v. Wolf*, 820 F.2d 1499, 1501 (9th Cir. 1987) (upholding conviction for misapplying bank funds under 18 U.S.C. § 656 where evidence showed that "bank funds [were] lent under a record that misrepresents a material fact, such as the name of the true borrower or the purpose of the loan").

Accordingly, the Court DENIES defendant's motion to dismiss Counts 1-22.

## II. Lonich's motion to dismiss Count 29, or in the alternative, to strike surplusage and for a bill of particulars (Dkt. 100)

Defendant Lonich moves to dismiss Count 29 of the indictment as insufficiently pleaded. In the alternative, Lonich requests that the Court strike the language "among other things" from County 29, and for a bill of particulars.  Count 29 alleges, in full, as follows:

> On or about May 26-27, 2011, in the Northern District of California and elsewhere, defendants BRIAN MADJLESSI and DAVID LONICH did knowingly and corruptly attempt and intend to obstruct, influence, and impede an official proceeding, namely, a federal criminal grand jury investigation in the Northern District of California, and took a substantial step toward committing that crime by, among other things, instructing J.H. to claim falsely to federal agents and a grand jury that J.H. was the true owner of 101 Houseco and that J.H. had made money as its true owner, and did aid, abet, counsel, command, induce, procure, and cause the same, in violation of Title 18, United States Code, Sections 1512(c) and 2.

Indictment ¶ 32.  Defendant argues that the indictment is deficient because the government does

7

not identify what official proceeding defendant purportedly sought to obstruct.

The Court finds that the allegations of Count 29 are sufficient to state an offense. Section 1515(a)(1) defines an official proceeding as "(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, *or a Federal grand jury*." 18 U.S.C. § 1515(a)(1) (emphasis added). The indictment in this case states that Lonich and Madjlessi attempted and intended to obstruct, influence and impede a federal criminal grand jury investigation in this District in or about May 26-27, 2011, and charges that Lonich did so by instructing J.H. to claim falsely to federal agents and a grand jury that J.H. was the true owner of 101 Houseco and that J.H. had made money as its true owner. These allegations are sufficient to apprise Lonich of the charges against him.[3]

The cases cited by defendant are distinguishable. The First Circuit held that the indictment in *United States v. Murphy*, 762 F.2d 1151, 1153-54 (1st Cir. 1985), was deficient because "other than parroting the statute, and giving the date of the alleged offense as March 23, 1984, charged the defendants with 'threaten[ing] Richard Watson, a witness in an official proceeding.' What the proceeding was, or was to be, was in no way indicated." *Id*. at 1153. In *United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013), the Ninth Circuit held that a FBI investigation did not qualify as an "official proceeding" under the statute. Here, in contrast, the indictment alleges attempted obstruction of a federal criminal grand jury investigation.

Defendant also argues that open-ended language in Count 29 permits the government to seek conviction on facts other than those found by the grand jury. Count 29 alleges that Lonich "took a substantial step toward committing [obstruction of justice] by, *among other things*, instructing J.H. to claim falsely to federal agents and a grand jury that J.H. was the true owner of 101 Houseco and that J.H. had made money as its true owner." Indictment ¶ 32 (emphasis added). Lonich cites cases in which courts have held that the use of broadening language such as "among

---

[3] At the hearing, defense counsel requested that the government identify the specific grand jury subpoena that J.H. received. The government stated that it had already provided that information to the defense, and that the government would do so again if the defense still needed that information.

8

other things," "in part," and "including, but not limited to," in the charges of an indictment is potentially prejudicial because that language permits the prosecution to achieve a conviction based on facts and theories not found by the grand jury, which would violate the Fifth Amendment. *See, e.g.*, *United States v. Stirone*, 189 F. Supp. 12, 26 (S.D.N.Y. 1960) (striking the words "among other things" in charging counts of the indictment because "[t]he language in question is not only surplusage, but may, if not stricken, result in depriving a defendant of his constitutional right to be accused of a felony offense only on the basis of a grand jury indictment."). The court in *United States v. Menendez*, Cr. No. 15–155, 2015 WL 5915749 (D.N.J. Aug. 8, 2015), addressed this issue:

> Courts have held that broadening phrases like "among other things," "in part," and "including, but not limited to" are potentially prejudicial because they could "lead the jury to speculate that [the] defendant was guilty of or responsible for actions in addition to those charged in the indictment," *United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989), or "permit the prosecution to go beyond the specific charge of falsity made by the grand jury" when presenting evidence at trial. *United States v. Kassir*, 2009 WL 995139, at *3 (S.D.N.Y. Apr. 9, 2009) (quoting *United States v. Pope*, 189 F. Supp. 12, 25 (S.D.N.Y. 1960)); *see also United States v. DeFabritus*, 605 F. Supp. 1538, 1547 (S.D.N.Y. 1985); *United States v. Hubbard*, 474 F. Supp. 64, 82 (D.D.C. 1979); *United States v. Brighton Building & Maintenance Co.*, 435 F.Supp. 222, 230 (N.D. Ill. 1977), *aff'd* 598 F.2d 1101 (7th Cir. 1979).
>
> However, courts have approved the use of broadening language in the "means" section of indictments because it "goes only to the matter of proof and does not constitute a basis for asserting that the notice provided in [a charge] is constitutionally defective." *United States v. Haldeman*, 559 F.2d 31, 126 (D.C. Cir. 1976).

*Id*. at *13-14. In *United States v. DeFabritus*, 605 F. Supp. 1538 (S.D.N.Y. 1985), the court struck "among other things" from an indictment charging, in connection with tax fraud counts, "[r]ather, the corporate monies were used, among other things, for the construction and improvement of personal residences and for the benefit of themselves and others" and "the defendant and his co-conspirators thus concealed, among other things, the true nature of the payments and their own tax liability for the monies they received by aiding and assisting in the preparation of false corporate tax returns." *Id*. at 1547 n.11. The court found that "among other things" "does not add anything to the charges in the indictment and would lead the jury to draw improper inferences regarding other crimes not charged in the indictment." *Id*. at 1547.

9

The Court concludes that the language "among other things" should be stricken from Count 29 because this broad language contained in a charging paragraph "adds nothing to the charges, gives the defendant no further information with respect to them, and creates the danger that the prosecutor at trial may impermissibly enlarge the charges contained in the Indictment returned by the grand jury." *United States v. DePalma*, 461 F. Supp. 778, 798-99 (S.D.N.Y. 1978). By striking this language, the Court in no way forecloses the government from presenting any proof relevant to the charges at trial.

### III. Defendant Lonich's motion to strike surplusage from the prefatory allegations and from Counts 1 and 3 through 8 of the indictment, or in the alternative, for a bill of particulars (Dkt. 101)

The prefatory language of the indictment, as well as Counts 1 and 3 through 8 (the conspiracy to commit wire fraud and substantive wire fraud allegations), allege a "material scheme to defraud Sonoma Valley bank *and others* and to obtain money from Sonoma Valley Bank *and others*." Indictment at ¶ 7 (emphases added); *see also id*. ¶¶ 17, 21. Defendant Lonich moves to strike the language "and others," or in the alternative, for a bill of particulars identifying the other victims. Lonich argues that the government's use of "and others" fails to provide him with sufficient notice of the charges against him. Lonich also contends that the use of "and others" deprives him of the right to stand trial only on allegations found by the grand jury.

The government responds by citing cases holding that an indictment need not identify mail fraud victims by name because "[t]he identity of the fraud victims is not an essential element of the crime." *United States v. Loayza*, 107 F.3d 257, 261 (4th Cir. 1997); *see also United States v. Mizyed*, 927 F.2d 979, 981 (7th Cir. 1991); *United States v. Hatch*, 926 F.2d 387 (5th Cir. 1991). While the government is correct that the indictment is not required to name the mail fraud victims, the *Loayza* court stated, "Nonetheless, the appellant is entitled to assurance that the indictment and prosecution were in fact for the same violations. In other words, upon what basis may it be determined that the grand jury returned a bill of indictment charging mail fraud of the same investors used by the prosecution to prove his case." *Loayza*, 107 F.3d at 261. The Fourth Circuit noted that the indictment in *Loayza* stated that eleven unnamed investors had been defrauded of a

1    total of $628,000, and that the indictment stated the dates of the checks used in the mail fraud, as
2    well as the amounts of each check and the identification of the legitimate investment company
3    from which the checks were sent.  All of this information, the Fourth Circuit held, "assures that the
4    grand jury presented an indictment based on the investors who testified at trial."  *Id*.  The Fourth
5    Circuit also commented, "It nonetheless bears noting that the addition of the victims' identities
6    could easily have been included in the indictment. Indeed, such a simple addition would have
7    negated the motion to dismiss below and thus, a portion of this appeal."  *Id*. at 262.

8    Here, Counts 1 and 3-8 charge that defendants engaged in a "material scheme to defraud
9    Sonoma Valley bank *and others* and to obtain money from Sonoma Valley Bank *and others*."
10   Indictment at ¶ 7 (emphases added); *see also id*. ¶¶ 17, 21.  Unlike the indictment in *Loayza* which
11   charged mail fraud related to eleven investors, the indictment here is open-ended and unclear as to
12   the number of victims.  The Court finds that under these circumstances, it is appropriate to strike
13   "and others" from these portions of the indictment.  If the government wishes to supplement the
14   indictment with additional information about the victims, it may do so.  The Court notes that the
15   government may add more information about the victims without identifying them by name, as the
16   indictment did in *Loayza*.

17   Accordingly, the Court GRANTS defendant's motion to strike "and others" from the
18   prefatory allegations and from Counts 1 and 3-8.

19

20   **IV.   Defendant Lonich's motion to dismiss Counts 1 through 8 for failure to state an offense, or in the alternative, to strike the omissions theory as inadequately pleaded (Dkt. 99)**
21

22   Counts 1-8 (conspiracy to commit wire and bank fraud in violation of 18 U.S.C. § 1349;
23   bank fraud in violation of 18 U.S.C. § 1344; and wire fraud in violation of 18 U.S.C. § 1343) are
24   predicated in part on a fraud theory of material omission.  *See* Indictment) ¶ 7 (prefatory
25   allegations alleging scheme to defraud "by omissions and concealment of material facts"); ¶ 17
26   (Count 1) (same); ¶ 19 (Count 2) (same); ¶ 21 (Counts 3 through 8) (same).  The only specific
27   omission alleged in the indictment is found in Paragraph 15(f), which alleges that "while
28   negotiating and obtaining refinancing for PLV East, [defendants] omitted the material fact 101

Houseco and this scheme were subjects of a criminal investigation[.]" *Id.* ¶ 15.

Defendant Lonich moves to dismiss Counts 1 through 8 to the extent these counts are predicated on an omissions theory, or in the alternative, to strike the omissions allegations from the indictment. Defendant contends that the indictment fails to state an offense based on an omissions theory because the indictment does not allege that Lonich had a duty to disclose material information. Defendant notes that the bank and wire fraud statutes prohibit a wide range of fraudulent conduct involving "false or fraudulent pretenses, representations, or promises." 18 U.S.C. §§ 1343, 1344. Defendant argues that the common law definition of fraud, which has been read into the fraud statutes, has traditionally treated a duty to disclose as an element of omission fraud. The government responds that the issue of duty is not an element of the offense that must be alleged, but rather that the "'duty' exception . . . is an affirmative defense and thus need not be alleged in the Indictment." Dkt. 100 at 5:8-9.

The Court has reviewed the authority cited by the parties, and agrees with defendant that if the government wishes to prosecute based upon an omissions theory, the indictment must allege that defendant owed a duty to disclose. "Implied, necessary elements, not present in the statutory language, must be included in an indictment." *United States v. DuBo*, 186 F.3d 1177, 1179 (9th Cir. 1999). Courts have held that "[m]ail and wire fraud can be premised on either a non-disclosure or an affirmative misrepresentation. A non-disclosure, however, can support a fraud charge only 'when there exists an independent duty that has been breached by the person so charged.'" *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (quoting *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir.1984), *rev'd on other grounds*, 473 U.S. 207 (1985)); *see also Dowling*, 739 F.2d at 1449 ("a non-disclosure can only serve as the basis for a fraudulent scheme when there exists an independent duty that has been breached by the person so charged."); *United States v. Steffen*, 687 F.3d 1104, 1116 (8th Cir. 2012) (affirming the dismissal of an indictment alleging bank fraud, mail fraud, and wire fraud where indictment alleged defendant failed to disclose information and duty to disclose arose from contract; "[W]e agree with the district court that in order for a fraudulent disclosure to be actionable fraud (either criminal or civil) the duty to disclose must be independent of any duty imposed by the contract. In

the civil context, a fraud claim is permitted only if it arises from acts that are separate and distinct from the contract. If the same rule did not apply in the criminal context, every breach of a bank loan agreement could give rise to criminal fraud prosecution.") (internal citations and quotation marks omitted); *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000) (affirming the dismissal of a portion of an indictment alleging tax fraud based on an omission; "An omission cannot amount to a false statement, which is an essential element of a section 7206(1) violation, without the crucial background fact that gives rise to the duty to disclose the fact that was omitted. Only the omission of facts required to be reported constitutes a material falsehood. The indictment must therefore allege what made the omission in this case criminal.").

The government does not cite any on point authority supporting its contention that the "duty exception" is an affirmative defense that need not be alleged in the indictment. The government relies on *United States v. Freter*, 31 F.3d 783, 788 (9th Cir. 1994), which interpreted Section 9603(b)(3) of CERCLA. That section provides that "[a]ny person . . . [i]n charge of a facility from which a hazardous substance is released, *other than a federally permitted release*, . . . who fails to notify immediately the appropriate agency" may be subject to penalties. 42 U.S.C. § 9603(b)(3) (emphasis added). The defendant in *Freter* argued that § 9603(b)(3) required that the government prove that the release was not "federally permitted" as an element of the offense. The Ninth Circuit disagreed, holding that "the exception for federally permitted releases states an affirmative defense. In doing so, we rely on '[t]he well-established rule . . . that a defendant who relies upon an exception to a statute made by a proviso or distinct clause, whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he comes within the exception.'" *Id.* (quoting *United States v. Green*, 962 F.2d 938, 941 (9th Cir. 1992)). The Court finds *Freter* inapposite because that case involved a statutory exception.

Accordingly, the Court dismisses Counts 1 through 8 to the extent those counts allege an omissions theory of fraud.

///

## V. Defendant Melland's motion to dismiss Counts 1-23 of the indictment (Dkt. 104)

Defendant Melland moves to dismiss Counts 1-23 of the indictment for insufficiency, multiplicity and duplicity.[4] Melland contends that the counts alleging conspiracy to commit wire and bank fraud, bank fraud, wire fraud, conspiracy to make false statements to a bank, conspiracy to commit money laundering, money laundering, and conspiracy to misapply bank funds are pled in such a way that it is impossible for Melland to know what he did to commit these offenses or when he did such actions. Melland also argues that the indictment does not allege when he joined any of the multiple conspiracies charged or whether it was one conspiracy with multiple objectives or multiple conspiracies.

The Court finds that the indictment is sufficient. The indictment alleges, in language incorporated into each of the challenged counts, that "[d]efendants MADJLESSI, LONICH, CUTTING, and MELLAND then conspired to have MADJLESSI bid on and obtain this defaulted loan contrary to FDIC regulations and through a straw borrower, J.H." Indictment ¶ 9. The indictment charges that Melland took numerous specific actions as part of that conspiratorial agreement. *See id*. at ¶ 11 ("Knowing that J.H. was a straw, CUTTING and MELLAND took steps to authorize that loan … ."); *id*. ("Between March 2009 and November 2009, with CUTTING's and MELLAND's assistance, the loan balance to 101 Houseco increased from an initial balance of less than $5,500,000 to a final balance of almost $9,500,000."); *id*. at ¶ 15(a) ("MADJLESSI, LONICH, CUTTING, and MELLAND falsely claimed to Sonoma Valley Bank that J.H. was the borrower behind 101 Houseco for a loan it sought, knowing that MADJLESSI and LONICH were the true borrowers as the individuals in actual control of 101 Houseco[.]"); *id*. ("CUTTING and MELLAND recommended to Sonoma Valley Bank's loan committee that it should make the loan to 101 Houseco without disclosing their knowledge that approving the loan would likely violate the bank's legal lending limit to MADJLESSI and his related entities[.]"); *id*. at ¶ 29 ("SEAN CUTTING, and BRIAN MELLAND, being officers, agents, and employees of Sonoma Valley Bank, which was then insured by the FDIC, did knowingly conspire to willfully, and with intent to

---

[4] Although defendant's motion is framed as challenging the indictment for multiplicity, the body of defendant's motion only challenges the indictment for insufficiency and duplicity.

injure and defraud that bank, misapply funds and credits in excess of $1,000 belonging to that bank and entrusted to its case, specifically, funds disbursed in a loan to 101 Houseco … ."). "An indictment . . . need only set forth the essential facts necessary to inform the defendant of what crime she is charged; it need not explain all factual evidence to be proved at trial." *United States v. Blinder*, 10 F.3d 1468, 1476 (9th Cir. 1993). For the same reason, the Court finds that a bill of particulars is not warranted.

Defendant also asserts that the Indictment is unclear as to time frames. The Court disagrees. *See, e.g.*, Indictment ¶ 7 (stating that the scheme to defraud occurred "no later than approximately March 2009 until approximately September 2012").

Finally, Melland contends that all of the conspiracy counts (Counts One, Nine, Ten and Twenty-Three) contain multiple conspiracies, and are therefore duplicitous. "An indictment is considered duplicitous if a single count combines two or more different offenses." *United States v. Renteria*, 557 F.3d 1003, 1007 (9th Cir. 2009). Melland asserts that "[t]he evidence will show the disparate acts of several defendants, acting without common plan or common objective. The nature of the acts, the identity of the participants and the multiple agreements to commit separate crimes all point to the fact that multiple conspiracies are alleged." Dkt. 104 at 18-19. The Court disagrees, and finds that the indictment as framed alleges different conspiracies. To the extent Melland makes assertions about what the evidence will show, those arguments go beyond the face of the indictment. Similarly, defendant's arguments about a possible variance between the allegations of the indictment and the government's proof at trial are premature, and defendant may renew these arguments if appropriate at the time of trial.

Accordingly, the Court DENIES defendant's motion to dismiss Counts 1-23.

## VI. Defendant Cutting's motion to dismiss money laundering counts (Counts 11-14) (Dkt. 103)

The Indictment charges defendant Cutting with 28 counts of: (i) bank fraud, wire fraud, money laundering, and conspiracy to commit the same; (ii) conspiracy to make false statements to a bank; (iii) conspiracy to misapply bank funds; and (iv) false bank entries. Indictment ¶¶ 17, 19,

21, 23, 25, 27, 29 & 31.

Defendant Cutting moves for an order dismissing Counts 11 through 14 of the indictment, each of which alleges that Cutting engaged in money laundering in violation of 18 U.S.C. § 1957.[5] Cutting contends that under *United States v. Santos*, 553 U.S. 507 (2008), and *United States v. Van Alstyne*, 584 F.3d 803 (9th Cir. 2009), money laundering allegations based on transactions intended to promote the carrying on of specified unlawful activity implicate a "merger problem" that effectively results in Cutting being charged multiple times for the same underlying conduct.

In *United States v. Santos*, 553 U.S. 507 (2008), the Supreme Court, in a plurality opinion, construed the term "proceeds" in the money laundering statute under which Santos was convicted. Section 1956(a)(1)(A) of Title 18 of the U.S. Code provides, in relevant part, that "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of a specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity," is guilty of money laundering ("Laundering of Monetary Instruments").

The defendant in *Santos* operated an illegal lottery, and employed "runners" and "collectors" to gather funds from gamblers and deliver them to Santos. Santos used some of the funds to pay the runners and collectors, as well as the lottery's winners. *Santos*, 128 S. Ct. at 2022-23. These payments formed the basis of an indictment charging Santos with both running an illegal gambling business (in violation of 18 U.S.C. § 1955) and money laundering (18 U.S.C. § 1956(a)(1)(A)(I)). The majority noted that paying the winners of a lottery is a "normal part of [the] crime" of running an illegal gambling business. *Id*. at 2027. It found that there was "no explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code, to radically increase the sentence for that crime." *Id*. The plurality referred to this as the "merger problem" – i.e., since functioning lotteries will presumably pay their winners, and since such payments from

---

[5] Cutting does not move to dismiss the other eight money laundering counts, Counts 15-22.

16

gross receipts are intended to promote the illegal lottery, equating proceeds with gross receipts would turn nearly every violation of the illegal lottery statute into a simultaneous violation of the money laundering statute. A majority of the *Santos* Court therefore held that the term "proceeds," as applied to Santos' offenses, refers to the "profits" of the criminal activity, not to the operation's "gross receipts," and that Santos' payments to runners, collectors, and winners constituted regular expenses, rather than profits, of the illegal gambling business. *See United States v. Van Alstyne*, 584 F.3d 803, 811 (9th Cir. 2009) (analyzing *Santos*). Justice Stevens' concurrence, which rested on the narrower ground and is considered the holding of the opinion, reserved defining "proceeds" "[i]n other applications of the [money laundering] statute not involving such a perverse result." *Id*. at 2033 n.7.

Defendant argues that Counts 11-14 fail to state an element of the money laundering charges because the underlying transactions do not implicate "profits" of the alleged unlawful activity, and instead those counts deal with "proceeds" of the alleged scheme. Defendant argues that "[a]ccording to the government's allegations, in order for the scheme to defraud to achieve its goals, the loan disbursements to 101 Houseco were transferred to Mr. Madjlessi and/or Mr. Lonich—the individuals alleged to have control over 101 Houseco—to complete the alleged scheme. (Indictment ¶¶ 7, 11 & 14.) Without this crucial step of gaining control of the loan proceeds, Mr. Madjlessi would not have been able to ultimately gain ownership and control of PLV East and refinance the property through Freddie Mac—the alleged conclusion of the scheme to defraud. (See id. ¶¶ 7 & 14.)."

The government responds that defendant's motion is premature. The government asserts that the indictment properly pleads all of its money laundering counts, and notes that the indictment does not say anything with regard to profits or gross receipts. The government argues that only when evidence has been introduced at trial can the Court determine whether there is a merger problem. The government cites a number of cases in which courts have denied motions to dismiss an indictment based on *Santos*. *See, e.g., United States v. Sarad*, No. 2:11–cr–00387–KJM, 2014 WL 127973, at *2 (E.D. Cal. Jan. 14, 2014) ("[A]t this stage and from the face of the indictment, the court cannot engage in a meaningful analysis of whether a 'merger problem' may

17

1   arise as initially articulated in Santos and further interpreted in *United States v. Grasso*, 724 F.3d
2   1077, 1092 (9th Cir. 2013) . . . ."); *United States v. Catapano*, No. CR-05-229 (SJ), 2008 WL
3   4107177, at *2 (E.D.N.Y. Aug. 12, 2008) (denying a motion to dismiss a facially valid indictment
4   because the government may be able to prove profits at trial); *United States v. Thompson*, No.
5   3:06-CR-123, 2008 WL 2514090, at *2 (E.D. Tenn. Jun. 19, 2008) (same); *United States v.
6   Martin*, No. 08–0026–02–CR–W–FJG, 2009 WL 330867, at *11 (W.D. Mo. Feb. 9, 2009) (same);
7   *United States v. Armstrong*, No. 06-20663, 2008 WL 5068601, at *1 (E.D. Mich. Nov. 19, 2008)
8   (holding indictment is sufficient if it tracks the language of the statute and stating "[w]hether or
9   not the jury instructions should state that 'proceeds' means 'profits' is for another day.").

10  The Court finds that Counts 11-14 are adequately pled, and that defendant's motion is
11  premature.  As noted above, in the context of a motion to dismiss an indictment, the Court "is
12  bound by the four corners of the indictment in analyzing whether a cognizable offense has been
13  charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  Counts 11-14 allege the
14  elements of money laundering under 18 U.S.C. § 1957, and the indictment does not mention
15  promotion nor does it identify any proceeds or profits of any schemes.  Whether the government
16  will introduce sufficient evidence that the alleged laundered proceeds were profits of the unlawful
17  activity is a question that cannot be resolved at this stage of the proceedings.  Further, the Court
18  finds that deferring this question until trial will not prejudice defendant because he faces multiple
19  additional money laundering counts not at issue in the instant motion.

## CONCLUSION

22  For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant
23  Lonich's motion to dismiss Counts 1-22 of the indictment; DENIES defendant Lonich's motion to
24  dismiss Count 29 but GRANTS the alternative motion to strike the surplusage "among other
25  things" from that count; GRANTS defendant Lonich's motion to strike the surplusage "and others"
26  from the prefatory allegations and from Counts 1 and 3-8; GRANTS defendant Lonich's motion to
27  dismiss Counts 1-8 to the extent those counts allege an omissions theory of fraud; DENIES
28  defendant Melland's motion to dismiss Counts 1-23; and DENIES defendant Cutting's motion to

dismiss Counts 11-14.

**IT IS SO ORDERED**.

Dated: January 27, 2016

_____
SUSAN ILLSTON
United States District Judge