UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 14-cr-00139-SI-1 |
|---|---|
| Plaintiff, | |
| v. | **ORDER RE: UNITED STATES' MOTION RE: DEFENDANT LONICH'S CLAIM OF PRIVILEGE** |
| DAVID LONICH, | |
| Defendant. | Re: Dkt. No. 123 |

The government has filed a motion for an order on defendant David Lonich's claim of privilege. Docket No. 123. The Court held a closed hearing on February 19, 2016. Having carefully considered the arguments presented, the Court hereby rules as follows.

## BACKGROUND

The facts of this case are detailed at length in the Court's January 27, 2016 Order re: Motions to Dismiss. Docket No. 162. For brevity, the Court recites here only those facts relevant to the motion at hand.

On March 18, 2014, the government filed a twenty-nine count indictment against defendants David Lonich, Brian Melland and Sean Cutting.[1] Lonich is charged with conspiracy to commit wire and bank fraud in violation of 18 U.S.C § 1349 (Count One), bank fraud in violation of 18 U.S.C. § 1344 (Count Two), wire fraud in violation of 18 U.S.C. § 1343 (Counts Three

---

[1] Bijan Madjlessi was originally charged in the indictment with the other defendants. Madjlessi died after the indictment and by operation of law all charges against him were dismissed.

1  through Eight), conspiracy to make false statements to a bank in violation of 18 U.S.C. § 371
2  (Count Nine), conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h) (Count
3  Ten), money laundering in violation of 18 U.S.C. § 1957 (Counts Eleven through Twenty-Two),
4  making false bank entries in violation of 18 U.S.C. § 1005 (Counts Twenty-Four through Twenty-
5  Eight), and attempted obstruction of justice in violation of 18 U.S.C. § 1512 (Count Twenty-
6  Nine). Madjlessi was a real estate developer, Lonich was Madjlessi's attorney, Cutting was
7  President and CEO of Sonoma Valley Bank until it failed in or about August 2010, and Melland
8  was the Senior Vice President and Chief Loan Officer of Sonoma Valley Bank until March 2010.

The indictment alleges: "No later than approximately March 2009 until approximately September 2012, the defendants devised and executed a material scheme to defraud Sonoma Valley Bank and others and to obtain money from Sonoma Valley Bank and others by means of materially false and fraudulent pretenses, representations, and promises and by omissions and concealment of material facts." Indictment ¶ 7.

On April 9, 2014, a search warrant was executed and materials seized from Lonich's home and law office. Balogh Decl. ¶ 10; Motion at 4. Pursuant to the process laid out in the affidavit to the search warrant application, the government formed a "taint team" to review the materials. *See* Balogh Decl. Ex. B; Motion at 4.[2] Beginning in December 2014, and continuing over the course of the next approximately ten months, the parties engaged in back and forth discussions regarding whether certain of the documents were privileged. *See* Balogh Decl. ¶¶ 28-30; Motion at 4. Lonich's defense counsel states that he provided a "preliminary log identifying privileged materials" on February 25, 2015, that he supplemented this log on March 25 and May 6, 2015, and that he re-did the log at the government's request on May 21, 2015. Balogh Decl. ¶¶ 28-30.

The government states that it requested further information from Lonich's counsel on August 19, August 27, and October 14, 2015, but that Lonich's counsel did not provide the information sought. Motion at 4-5. The taint team filed the present motion, under seal, on

---

[2] Balogh has filed an unsigned copy of the search warrant application affidavit, but has attested via declaration that this is a true and correct copy of the affidavit presented to Judge Spero. Balogh Decl. ¶ 3, Ex. B.

United States District Court
Northern District of California

December 11, 2015, seeking "the immediate disclosure of . . . 325 documents to the government's trial team."[3]  Motion at 5 n.4.  The taint team argues that Lonich's failure to provide the information requested should render his claims of privilege waived, that Lonich has not met his burden to establish privilege over certain documents and information, and that—even if the documents are privileged—they should be released to the trial team because the crime-fraud exception applies.  In his opposition, Lonich asserts that the search warrant was overbroad, that the government's use of a taint team is invalid, that Lonich is under no obligation to prepare a privilege log, that the documents are privileged communications, and that the government has not met the standard for the crime-fraud exception to apply.

**LEGAL STANDARD**

"Under federal law, the attorney-client privilege is strictly construed." *United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009).  The burden lies with the party claiming the privilege to prove each element of a "well-established eight-part test":

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id*. at 607-08 (citations omitted).  "Generally, the identity of an attorney's client . . . [is] not privileged." *In re Grand Jury Subpoenas*, 803 F.2d 493, 496 (9th Cir. 1986).

By contrast, the crime-fraud exception places the burden on the party opposing the privilege.  "To invoke the crime-fraud exception successfully, the government has the burden of making a prima facie showing that the communications were in furtherance of an intended or present illegality and that there is some relationship between the communications and the illegality." *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996) (quoting *In re Grand Jury Proceedings (The Corporation)*, 87 F. 3d 377, 380 (9th Cir. 1996)).  This involves a two-step process.  *Id*. (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)).  First, the government must

---

[3] All references to the government's motion are to the United States' Corrected Motion for Order on Defendant Lonich's Claim of Privilege.

1   submit evidence showing that "there is reasonable cause to believe that the attorney's services
2   were utilized in furtherance of the ongoing unlawful scheme . . . ." *Id*. "Reasonable cause is more
3   than suspicion but less than a preponderance of evidence." *Id*. "Mere allegations or suspicion by
4   the government are insufficient." *Id*.

5   "The government cannot show the otherwise privileged material to the judge unless and
6   until the judge has made this preliminary judgment" regarding reasonable cause. *Id*. Only then
7   may the court decide whether *in camera* review is appropriate. *Id*. at 1502. "[E]ven if the office
8   already has the putatively privileged material, the prosecutor still must go through the two-step
9   procedure of *Zolin*." *Id.* at 1503 (citing *United States v. De La Jara,* 973 F.2d 746, 749 (9th Cir.
10  1992)).

## DISCUSSION

### I.  Taint Team Process

In his opposition brief, Lonich urges the Court to "adopt the approach as taught by the Sixth Circuit" and dissolve the taint team in this case. Opposition at 20. At the hearing, Lonich asked the Court to rule on this request before ruling on the government's motion regarding privilege. Lonich cites largely to the Sixth Circuit decision in *In re: Grand Jury Subpoenas 04-124-03 & 04-124-05*, 454 F.3d 511 (6th Cir. 2006), as well as to decisions of several district court cases within the Ninth Circuit, from the Districts of Arizona, Nevada, and Oregon. *See* Opposition at 17-20. None of these support the remedy that Lonich seeks.

Two of the cases that Lonich cites involved taint teams that had failed to follow their own protocols. In *United States v. Pedersen*, No. 12-0431, 2014 WL 3871197 (D. Or. Aug. 6, 2014), the court did not disband the taint team but issued a supervisory opinion after the fact. This opinion recited the ways in which the prosecution violated the taint team protocols and actively interfered with attorney-client privilege, by listening in on legal phone calls and intercepting legal mail, without defense counsel's or the court's knowledge. *Pedersen*, 2014 WL 3871197, at *13-14, 19, 26. In *United States v. Renzi*, 722 F. Supp. 2d 1100 (D. Ariz. 2010), the court suppressed a wiretap obtained by a taint team that repeatedly violated its own protocols not to listen to or record

4

1    a confidential legal conversation involving an attorney, again without notifying the court of the
2    transgression. *Renzi*, 722 F. Supp. 2d at 1105, 1108-09, 1118.

3          Lonich correctly notes that the Sixth Circuit reversed a district court's approval of a taint
4    team, but it did so on grounds dissimilar from those presented here: the documents were not yet in
5    the government's possession. *See In re: Grand Jury Subpoenas*, 454 F.3d at 515. The Sixth
6    Circuit stated that, where the government has "already obtained the physical control of potentially-
7    privileged documents through the exercise of a search warrant[,] . . . the use of the taint team to
8    sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the
9    protection of privilege." *Id*. at 522-23 (citation omitted). This sentiment is repeated in the District
10   of Nevada decision that Lonich cites. *See* Opposition at 18. The court in that case noted: "In
11   cases involving the search of a law office. . . it may be incumbent on the Government to have a
12   taint team review of all records before they are reviewed by the investigating agents or the
13   prosecuting team." *See United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1039 (D.
14   Nev. 2006).

15         The cases that Lonich cites thus differ from the situation at hand. Based on the
16   information currently before the Court, the government has acted pursuant to the taint team
17   procedure outlined in the search warrant that Chief Magistrate Judge Spero approved in April
18   2014. *See* Balogh Decl. ¶¶ 2-3, Ex. B. Lonich argues foul play because Brian Stretch, previously
19   an attorney for the taint team, has since become Acting United States Attorney. Opposition at 19-
20   20. However, there is nothing to indicate that Mr. Stretch has not continued to be segregated from
21   the prosecution of this case. Lonich also objects that the taint team disclosed documents it deemed
22   non-privileged directly to the trial team, following a November 2014 hearing in which it told the
23   Court it would not do so. *Id*. at 12 n.12. However, the taint team brought this disclosure to the
24   Court's attention at a December 2014 hearing. *See* Docket No. 76 at 5:17-6:5. At that time,
25   Lonich's defense counsel stated that reviewing these documents was "at the top of [his] list to look
26   at . . . [a]nd if it's a part of a general issue of taint, [he would] brief those issues and address it at
27   the appropriate time." *Id*. at 6:13-19. The Court heard nothing further, including at a February
28   2015 status conference, until Lonich filed his opposition brief to the government's present motion

over one year later.[4]  *See* Docket No. 93; Opposition at 17-20.

Lonich does make the troubling assertion that some of the documents seized and reviewed were those between Lonich and counsel that he hired to represent him in this investigation.  *See* Opposition at 1.  (The counsel in question is not the present defense counsel and has not made an appearance in this case.)  However, as explained in Part II, *infra*, nothing that Lonich has presented to the government or to the Court makes it clear which documents these are.  If Lonich contends that they are among the documents seized, then he shall include them in his privilege log.  This process is explained further below.

Lonich may very well be correct that the use of taint teams is disfavored.  *See, e.g., SDI Future Health*, 464 F. Supp. 2d at 1037.  However, he has not made a compelling case for why, with the taint team procedure approved by Judge Spero nearly two years ago, the team should now be dissolved.  Absent "a showing that there has been any outrageous conduct by the Government in using their allegedly privileged materials, or that [defendant has] suffered substantial prejudice," Lonich's request to dissolve the taint team is DENIED.  *See id.* at 1055.

## II.  Attorney-Client Privilege

The Court now turns to the question of whether the documents in dispute are subject to the attorney-client privilege.  Through their briefing, the parties have narrowed the number of documents in dispute.  Lonich concedes that a number of the documents—213 of the 325 that the government initially sought to use—are not in fact subject to privilege.  Opposition at 4.  In its reply, the government clarifies that it is no longer seeking to disclose certain of the remaining documents, thus bringing the tally of documents in dispute to 75.  Reply at 2.

Of these 75 documents, the Court finds that Lonich has not presented enough information for the Court to determine whether the attorney-client privilege applies.  There are several filings before the Court in which Lonich has listed the documents he claims are privileged.  These include

---

[4] Lonich's opposition does not claim that the taint team disclosed privileged documents. Rather, he points to this instance as support for why the taint team cannot be trusted.  *See* Opposition at 12 n.12, 19-20.

correspondence in which Lonich identifies the purportedly privileged documents: a letter from Lonich to the government dated February 25, 2015; and a 929-page spreadsheet, sent from Lonich to the government on May 21, 2015. *See* Balogh Decl. Ex. H; Motion at 4, Ex. A. These "logs" contain little more than Bates numbers and folder locations. *See id.* The Court also has before it an annotated list of the documents the government seeks to disclose, as provided by Lonich in his opposition brief. *See* Balogh Decl. Ex. C. This list is similarly uninformative. For each of the purportedly privileged documents, Lonich assigned one of two descriptors: either (1) a name, presumably of the client holding the privilege ("Bijan Madjlessi," "Lonich," or "MFR Investment Trust,") or (2) "Withheld pending ruling," which Lonich explained at the hearing meant that Lonich wants the documents withheld pending a ruling from the Court as to whether the taint team procedure is proper. Lonich has not met his burden under the eight-part test required to establish attorney-client privilege. *See Ruehle*, 583 F.3d at 607-08.

The government argues that Lonich's claim of privilege should be deemed waived, citing to the Federal Rules of Civil Procedure and the standing orders from several judges in this district. Motion at 6-7. The Court declines to find that Lonich has waived his privilege at this time. Rather, the Court finds it appropriate to order that Lonich articulate his privilege claim with greater specificity.[5] The burden to establish privilege lies with Lonich, and Lonich may meet his burden through "a number of means . . ., one of which is the privilege log approach." *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992); *Ruehle*, 583 F.3d at 608. In fact, in his opposition, Lonich offers to prepare a privilege log. Opposition at 20.

The Court therefore ORDERS that Lonich prepare a privilege log as to the 75 documents still in dispute. The log must contain at minimum the following information, which the Ninth Circuit has found sufficient to demonstrate that the attorney-client privilege applies: "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on

---

[5] To the extent that Lonich's opposition seeks to challenge the search of his home and office as overbroad, the Court declines to rule on that question at this time. The search warrant is the subject of Lonich's upcoming motion to suppress, set to be heard before the Court on April 1, 2016. *See* Docket No. 155; *see also Ruehle*, 583 F.3d at 606 n.6 (explaining the distinction between a motion to exclude privileged evidence and a motion to suppress evidence obtained through government misconduct).

the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *See In re Grand Jury Investigation*, 974 F.2d at 1071.  The parties shall then meet and confer regarding whether privilege applies.

After that time, should the government wish to seek an order that the documents fall within the crime-fraud exception to privilege, the government must follow the two-step process outlined by the Supreme Court in *United States v. Zolin*, 491 U.S. 554, 572 (1989), and further explained by the Ninth Circuit in *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996).  The Court will not entertain requests to review any privileged documents *in camera* until the government has made a showing, <u>without relying on the contents of the privileged documents</u>, that "there is reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme."  *See Zolin*, 491 U.S. at 572; *Chen*, 99 F.3d at 1503.  The Court emphasizes that, per *Zolin*, it has not examined the disputed documents, which the government attached to the present motion.

Of course, Lonich need not provide information for any documents for which he no longer wishes to claim privilege, should that number change during the course of preparing his privilege log.  Likewise, if the government determines that it no longer wishes to use any of the remaining 75 documents at issue, it shall inform Lonich as soon as practicable so that Lonich need not prepare log information as to those documents.  Should Lonich wish to assert a claim of privilege over any other documents that the taint team wishes to disclose, beyond the 75 currently in dispute, Lonich shall include those documents in his privilege log.

## CONCLUSION

Lonich's request to dissolve the taint team is DENIED.  The government's motion is GRANTED to the extent that it seeks an order that Lonich meet his burden of privilege and DENIED without prejudice to the extent that it seeks an order that the disputed documents are not privileged.  Lonich shall present the government with his privilege log as to the 75 documents **no later than March 4, 2016.**  The parties shall meet and confer **no later than March 11, 2016.**  If

the parties still cannot agree as to whether privilege applies, either party may file an appropriate motion with the Court **no later than March 25, 2016.**

**IT IS SO ORDERED**.

Dated:  February 23, 2016

_____
SUSAN ILLSTON
United States District Judge