UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff,<br>v.<br>DAVID LONICH,<br>   Defendant. | Case No. 14-cr-00139-SI-1<br><br>**ORDER RE: UNITED STATES'<br>RENEWED MOTION RE: DEFENDANT<br>LONICH'S CLAIM OF PRIVILEGE**<br><br>Re: Dkt. No. 193 |

The government has filed a renewed motion for an order on defendant David Lonich's claim of privilege. Dkt. No. 193. The Court held a closed hearing on April 28, 2016. Having carefully considered the arguments presented, the Court hereby GRANTS in part and DENIES in part the government's motion.

**BACKGROUND**

The facts of this case are detailed at length in the Court's January 27, 2016 Order re: Motions to Dismiss. Dkt. No. 162. For brevity, the Court recites here only those facts relevant to the motion at hand.

On March 18, 2014, the government filed a twenty-nine count indictment against defendants David Lonich, Brian Melland and Sean Cutting.[1] Lonich is charged with conspiracy to commit wire and bank fraud in violation of 18 U.S.C. § 1349 (Count One), bank fraud in violation of 18 U.S.C. § 1344 (Count Two), wire fraud in violation of 18 U.S.C. § 1343 (Counts Three

---

[1] Bijan Madjlessi was originally charged in the indictment with the other defendants. Madjlessi died after the indictment and by operation of law all charges against him were dismissed.

1  through Eight), conspiracy to make false statements to a bank in violation of 18 U.S.C. § 371
2  (Count Nine), conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h) (Count
3  Ten), money laundering in violation of 18 U.S.C. § 1957 (Counts Eleven through Twenty-Two),
4  making false bank entries in violation of 18 U.S.C. § 1005 (Counts Twenty-Four through Twenty-
5  Eight), and attempted obstruction of justice in violation of 18 U.S.C. § 1512 (Count Twenty-
6  Nine). Madjlessi was a real estate developer, Lonich was Madjlessi's attorney, Cutting was
7  President and CEO of Sonoma Valley Bank until it failed in or about August 2010, and Melland
8  was the Senior Vice President and Chief Loan Officer of Sonoma Valley Bank until March 2010.

The indictment alleges: "No later than approximately March 2009 until approximately September 2012, the defendants devised and executed a material scheme to defraud Sonoma Valley Bank and others and to obtain money from Sonoma Valley Bank and others by means of materially false and fraudulent pretenses, representations, and promises and by omissions and concealment of material facts." Indictment ¶ 7.

In April 2014, Special Agent Terry M. Neeley of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP") submitted a search warrant application to Magistrate Judge Joseph C. Spero. Dkt. No. 190-5 (Neeley Decl. ¶ 2). On April 7, 2014, Judge Spero approved the search warrant application. *Id*. The warrant authorized the search of Lonich's residence, Madjlessi's residence, and the three business offices located at Park Lane Villas ("PLV"). *Id*.

On April 9, 2014, the government executed the search warrant and seized materials from all locations. *Id*. Pursuant to the process laid out in the affidavit to the search warrant application, the government formed a "taint team" to review the materials. Dkt. No. 123 at 4. Beginning in December 2014, and continuing over the course of the next approximately ten months, the taint team and counsel for Lonich engaged in discussions regarding whether certain of the documents were privileged. *Id*.

On December 11, 2015, the government filed a motion, under seal, for an order regarding Lonich's privilege claim. Dkt. No. 123. The taint team sought to disclose 325 documents to the government's trial team. The parties later narrowed the documents in dispute from 325 to 75.

2

On February 23, 2016, the Court granted the government's motion to the extent it sought an order that Lonich meet his burden of proof on the question of privilege and denied it without prejudice to the extent that it sought an order that the disputed documents are not privileged. Dkt. No. 181. The Court ordered Lonich to present the government with an updated privilege log as to the 75 documents still in dispute no later than March 4, 2016. *Id*. at 8. The log was to contain at minimum the following information: "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *Id*. at 7-8 (citing *In re Grand Jury Investigation (Corporation)*, 974 F.2d 1068, 1071 (9th Cir. 1992)).

The Court further ordered the parties to meet and confer following production of the new privilege log. *Id*. at 8-9. If the parties could not reach agreement at that stage, the Court granted leave to either party to file a motion by March 25, 2016. The Court stated that it would entertain the government's arguments regarding the crime-fraud exception only if the government followed the two-step process outlined in *United States v. Zolin*, 491 U.S. 554, 572 (1989). *Id*. at 8. The Court emphasized that, per *Zolin*, it had not yet examined the disputed documents, which the government attached to its December 11, 2015 motion. *Id*.

On March 4, 2016, Lonich filed a motion seeking to suppress the evidence gathered as a result of the April 2014 search warrant and seeking an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Dkt. No. 186. The Court denied Lonich's motion on April 15, 2016. Dkt. No. 206.

On March 25, 2016, the taint team filed the present motion under seal.[2] Dkt. No. 193. The government seeks disclosure of thirty-six documents, which Lonich has designated as privileged or subject to the work-product doctrine. *Id*. at 1; Motion, Ex. A (Updated Log). The government argues that of these documents, nineteen are not privileged or are not confidential attorney work

---

[2] Several days later, Lonich filed an emergency ex parte application to strike portions of the government's renewed motion. Dkt. No. 193. The Court denied the application that same day. Dkt. No. 194.

product. *Id*. at 26. The government contends that seventeen documents, even if Lonich can establish attorney-client privilege, are subject to the crime-fraud exception. *Id*. The government cites *Zolin* and requests that the Court "engage in an *in camera* review of [the seventeen] documents and make a finding that those documents should be disclosed pursuant to the crime-fraud exception." *Id*. at 1.

In his opposition, Lonich asserts that he has met his burden of establishing attorney-client privilege over the disputed documents and that his updated privilege log conforms to the Court's February 23 order. Opposition at 2. Concerning the crime-fraud exception, Lonich contends that the government has failed to establish its applicability. *Id*. at 5. Lonich argues that the government "relies on the substance of [Lonich's] privileged communications as a basis to deem [such communication] non-privileged," which would violate the Court's prior order. *Id*. at 4-5. Lonich requests that the Court strike these portions of the government's renewed motion. *Id*. at 4.

## LEGAL STANDARD

"Under federal law, the attorney-client privilege is strictly construed." *United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009). The burden lies with the party claiming the privilege to prove each element of a "well-established eight-part test":

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id*. at 607-08 (citations omitted). "Generally, the identity of an attorney's client . . . [is] not privileged." *In re Grand Jury Subpoenas*, 803 F.2d 493, 496 (9th Cir. 1986).

## DISCUSSION

### I. Attorney-Client Privilege

Lonich asserts that the documents the government challenges are privileged attorney-client communications. Opposition at 2. Lonich claims that the government is not entitled to any further information and that by furnishing the updated log, he has met his burden of establishing

4

1    privilege with respect to the disputed documents. *Id*. at 3. Lonich does, however, provide
2    additional information in the form of a declaration. *Id*.

3       While the government agrees that Lonich has complied with the Court's prior order to
4    provide an updated privilege log, it contends that Lonich has not met his burden of establishing the
5    attorney-client privilege. Motion at 1. The government argues that Lonich wrongly designates
6    non-client and non-attorney parties as "agents" and that Lonich failed to establish that an attorney-
7    client relationship exists or that the communications are privileged in nature as to Documents 2,
8    11, 38, 62-64, 66-67, 69-70, 95, 99-101, 105, 125, 184-188, 199, and 213. *Id*. at 3-4.

9       As a threshold matter, the Court agrees with the government that providing the privilege
10   log is not sufficient for Lonich to establish a valid claim of privilege. *See AT&T Corp. v.*
11   *Microsoft Corp*., No. 02-0164-MHP (JL), 2003 WL 21212614, at *2 (N.D. Cal. Apr. 18, 2003).
12   While a privilege log is one method of asserting privilege, Lonich still needs to prove each
13   element of the eight-part test to show that attorney-client privilege applies to each disputed
14   communication. *See id.* at *2-3. The Court now turns to whether the documents in dispute are
15   subject to the attorney-client privilege.

### A. Communications by an Individual Client
#### 1. Bijan Madjlessi (Documents 2a and 199)

19      Lonich asserts that Document 2a is a privileged communication between Lonich and his
20   client, Bijan Madjlessi. Lonich Decl. ¶ 2. Lonich describes Document 2a as an "undated post it,
21   and [it] is a communication from Client to Attorney regarding a then pending dispute with Gregg
22   Smith and Jed Cooper, and [that it] explained what Client thought the document to which the post
23   it is attached evidenced." Motion, Ex. A. The post-it is apparently attached to Document 2b, a
24   letter from Gregg Smith to Lonich, addressed further below. The government responds that "[a]ny
25   role the note played in seeking legal advice appears extremely attenuated. Even if it did, the note
26   would not render the underlying communication privileged." Motion at 6.

27      Here, Lonich has met his burden of establishing attorney-client privilege under the eight-
28   part test. *See Ruehle*, 583 F.3d at 607-08. Lonich provides that "from March 2009 up and through

5

April 2014, [Lonich] worked as General Counsel for Bijan Madjlessi . . . ." Lonich Decl. ¶ 3. Madjlessi sought legal advice from Lonich in his capacity as an attorney. The communications related to that purpose, as Lonich was "preparing [his] response to [the] allegations [by Gregg Smith and Jed Cooper]." *Id.* ¶ 2. According to Lonich's log, the post-it note was not viewed by anyone other than a paralegal and co-counsel, and there is no indication that Madjlessi waived the privilege protection. Motion, Ex. A. Therefore, the Court finds that Document 2a is privileged and should not be disclosed to the trial team.

As to Document 199, on its face, Lonich has also validly asserted that the privilege applies. He describes the document as an "[e]mail from David Lonich to Bijan Madjlessi advising him, as required by Rules of Professional Conduct, of a conflict." *Id*. However, the government has additionally sought disclosure of this document pursuant to the crime-fraud exception. The Court addresses this argument in Section III, *infra*.

### 2. Biganeh Madjlessi (Documents 38 and 125)

Lonich declares that his retention as general counsel for Bijan Madjlessi from March 2009 through April 2014 "included providing his legal services for the companies that [Madjlessi] controlled, and included providing legal advice to [Madjlessi's] wife, Biganeh Madjlessi, and the companies that she controlled." Lonich Decl. ¶ 3. Lonich describes Documents 38 and 125 as privileged attorney-client communications between himself and Biganeh Madjlessi. *Id*. ¶¶ 3, 9. The privilege log describes Document 38 as "[h]andwritten notes prepared by Biganeh Madjlessi and provided to David Lonich for the purpose of assessing the facts and preparing a memorandum regarding loans made by Elizabeth Madjlessi (her daughter) to Houseco Construction, Park Lane LLC and Jim House." Motion, Ex. A. Document 125 is listed as a "[d]raft of memorandum prepared by David Lonich for Biganeh Madjlessi regarding loans made by Elizabeth Madjlessi." *Id*. The government attacks Lonich's ability to show that the communications were made by a client (element five of the privilege test), arguing, "Lonich wholly fails to particularize his relationship with Biganeh Madjlessi, fails to identify the scope or the duration of their attorney-client relationship, and refuses to provide documentation substantiating the existence of this

attorney-client relationship." Motion at 6.

In the Court's view, Lonich has satisfied the eight-part test as to Documents 38 and 125. By his declaration, Lonich has stated under penalty of perjury that he was an attorney who represented Biganeh Madjlessi and that the documents were created with her as his client. Lonich Decl. ¶¶ 3, 9. Lonich has described the scope and duration of his retention. *Id*. ¶ 3. Given that an attorney-client relationship may exist even in the absence of a formal retainer agreement, the Court will not require Lonich to produce a retainer in order to prove that Biganeh Madjlessi was his client. *See Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1505 (9th Cir. 1993) ("A formal contract is not necessary to show that an attorney-client relationship has been formed.") (citing *Bernstein v. State Bar*, 50 Cal. 3d 221, 226 (1990)). Indeed, a relationship may exist for privilege purposes even where the client does not pay the attorney for services rendered. *Advanced Mfg. Techs., Inc. v. Motorola, Inc.*, No. 99-1219, 2002 WL 1446953, at *5 (D. Ariz. July 2, 2002). Therefore, the government's claim that Lonich must provide documentation substantiating the existence of an attorney-client relationship with Biganeh Madjlessi is without merit. Finding no reason to doubt the remainder of the eight-part test, the Court finds that Documents 38 and 125 are privileged.[3]

### B. Communications by a Corporate Client

The government seeks to disclose a number of documents involving communications with people whom Lonich describes as agents or affiliates of his corporate client, Secured Assets Belvedere Towers, LLC ("SABT").[4] Lonich explains that he was the attorney for SABT, a "limited liability company that had acquired certain condominiums in a highrise located in Reno,

---

[3] The Court is less convinced by the assertion that Lonich makes in his declaration that Patti Brajkovich was also his client, with respect to Documents 184-188. *See* Motion, Ex. A; Lonich Decl. ¶ 17. Lonich provides no information about the nature or duration of this representation. Somewhat confusingly, he claims that as to these documents Bijan and Biganeh Madjlessi were acting not as his clients but as agents of Brajkovich. *See id*. The Court defers ruling on this privilege request, given that the government also seeks *in camera* review of these documents, as explained below.

[4] The individuals named as agents or affiliates of SABT are: Gregg Smith, Anita Perez, Terry Tallan, Bijan Madjlessi, Stephanie Burman, Crystal Colville, Mike Zalkaske, Terry Strongin, Kelly Vandever, and Jed Cooper. Motion, Ex. A.

Nevada." Lonich Decl. ¶ 2. The government argues that Lonich claims privilege too broadly and that Lonich fails to meet his burden of establishing that the SABT "agents" meet the definition of "functional employees" to whom the privilege may extend under *Graf*. Motion at 4, 9.

As the Ninth Circuit has acknowledged, "[t]he administration of the attorney-client privilege in the case of corporations presents special problems. As an inanimate entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985); *accord Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1492 (9th Cir. 1989) ("As fictitious entities, corporations can seek and receive legal advice and communicate with counsel only through individuals empowered to act on behalf of the corporation.")).

Courts continue to apply the eight-part test to ascertain whether corporate communications are subject to the attorney-client privilege. *Graf*, 610 F.3d at 1156 (citing *Ruehle*, 583 F.3d at 607). This requires a case-by-case analysis. *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981) (rejecting "control group" test but leaving as open question what test should apply)). Communications may be privileged when made between corporate counsel and one who is a "functional employee" of the corporation. *Graf*, 610 F.3d at 1159. The power to waive the privilege, however, belongs not to the employees but "rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985).

### 1. Shareholders of SABT (Documents 2b, 95, 99-101)

At the hearing, the Court inquired into the structure of SABT and the roles that the named individuals played within that structure. Lonich explained that SABT was a closely held corporation, whose members consisted of Ananda Partners III and VS Management LLC. Ananda Partners III was the majority shareholder, and thereby the controlling member of SABT. Gregg Smith and Jed Cooper were the managers of Ananda Partners III. VS Management, LLC, which Lonich explains in his declaration was a member of VS Management Reno, LLC, was the other

8

member of SABT but was not a controlling member. Lonich Decl. ¶ 4. Terry Strongin and Kelly Vandever were the managers of VS Management, LLC. In their capacities with respect to SABT, Lonich stated that these individuals were involved in making decisions about how SABT would be run, in managing SABT's investments, and in communicating with Lonich, SABT's counsel. Lonich also clarified at the hearing that Smith and Cooper are the only ones with authority to waive privilege on behalf of SABT.[5] This is significant because the taint team received declarations from Strongin and Vandever, in which they state that certain documents are not attorney-client communications. Motion at 7 (citing United States' Supp. Reply, Ex. 3, 4 (Feb. 18, 2016)). Lonich has argued that these are invalid waivers because Strongin and Vandever lacked the authority to enter into them. Opposition at 2; Lonich Decl. ¶ 5.

Strongin and Vandever both filed declarations stating that, as to Documents 95 and 99-101, "David Lonich did not serve as my attorney or provide legal advice regarding the document." United States' Supp. Reply, Ex. 3, 4 (Feb. 18, 2016). The Court finds that Lonich has failed to meet his burden of proof with regard to the documents involving Strongin and Vandever, in light of the declarations they filed. Lonich has not shown that "legal advice of any kind [was] sought" in connection with the documents. *See Ruehle*, 583 F.3d at 607. Since corporations "seek and receive legal advice . . . only through individuals empowered to act on behalf of the corporation," the state of mind of those individuals matters. It would be illogical for the privilege to extend to a corporation where the individual through whom the corporation was acting did not intend to seek legal advice. *Cf. Upjohn*, 449 U.S. at 394 (finding attorney-client privilege extended to communications with employees where "the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice"). If Strongin and Vandever did not intend to seek legal advice from Lonich, then no privilege ever attached, and the question of waiver is irrelevant. As Lonich, Strongin, and Vandever are the only recipients listed on documents 95, 100, and 101, the Court finds these documents appropriate for release to the trial team. *See* Motion, Ex. A.

---

[5] At the hearing, the government argued that this was the first time Lonich had articulated who has the authority to waive privilege over SABT documents.

As to documents 2b and 99, however, Lonich lists Gregg Smith and Jed Cooper among the recipients. *Id*. Document 2b is a letter from Smith to Lonich. Document 99 consists of emails among Lonich, Strongin, Vandever, Smith, and Cooper that address "the client's authorization of [Lonich's] legal activities on behalf of SABT." Lonich Decl. ¶ 6. Counsel for Lonich stated at the hearing that he has contacted Smith and Cooper several times since October 2015 and that they do not waive their claim of privilege over the SABT documents. The Court finds that Lonich has asserted a valid claim of privilege over Documents 2b and 99 and DENIES the government's motion as to these documents.

### 2. Functional Employees of SABT (Documents 62-64, 66-67, 69-70)

As to the remaining SABT agents, Lonich stated at the hearing that Anita Perez and Terry Tallen were the on-site property managers for SABT. Mike Zalkaske was a consultant hired to oversee a $2 million "build-out" for SABT. Crystal Colville was an employee of an accounting firm retained by the homeowners association on SABT's project. Finally, Stephanie Burman performed accounting work for SABT but was an accountant for Greenbriar Construction, a company of Bijan Madjlessi. Lonich has not asserted that any of these individuals were employees of SABT but rather describes them as "agents" of SABT.

In *Bieter*, the Eighth Circuit found that the attorney-client privilege applied to communications between a partnership's attorney and an independent contractor. The contractor had been involved with the company for a number of years, worked out of the company's office in conjunction with its day-to-day manager, had daily interactions with the manager, attended meetings with corporate counsel either alone or with the manager, was represented by the partnership's counsel during his deposition, and held primary responsibility for securing tenants for the real estate development in question. *Bieter*, 16 F.3d at 933-34. "[H]e was in all relevant respects the functional equivalent of an employee." *Id*. at 938. He was therefore a client for purposes of the attorney-client privilege.

In *Graf*, the Ninth Circuit adopted the principles articulated in *Bieter*, finding the attorney-client privilege to apply to communications between a "functional employee" of a company and

the company's counsel.[6] There, the appeals court found that although the defendant called himself an outside consultant, his communications with corporate counsel were protected by the attorney-client privilege. *Graf*, 610 F.3d at 1159. He "regularly communicated with insurance brokers and others on behalf of [the company], marketed the company's insurance plans, managed its employees, and was the company's voice in its communications with counsel." *Id.* at 1157. In fact, he "was the company's primary agent in its communications with corporate counsel." *Id.* at 1159. As one "empowered to act on behalf of the corporation[,]" Graf's communications with corporate counsel were privileged. *Id.*

Here, Lonich has not met his burden of proof with respect to the documents involving Perez, Tallen, Zalkaske, Colville, or Burman. Lonich has offered little information regarding the roles these individuals played with respect to SABT, far from what the courts relied on to make a "functional employee" finding in *Bieter* and *Graf*. In fact, Lonich's declaration does not mention Colville or Burman by name at all.

Lonich argues that he has complied with this Court's February 23, 2016 order regarding his privilege log, but he fails to appreciate that it is his burden to prove each element of the eight-part privilege test. *See Ruehle*, 583 F.3d at 607-08. Lonich has had ample opportunity to do so. This is the second motion by the government for an order regarding Lonich's privilege claim. Docket Nos. 123, 193. In its order on the first motion, the Court noted the following history:

> Beginning in December 2014, and continuing over the course of the next approximately ten months, the parties engaged in back and forth discussions regarding whether certain of the documents were privileged. *See* Balogh Decl. ¶¶ 28-30; Motion at 4. Lonich's defense counsel states that he provided a "preliminary log identifying privileged materials" on February 25, 2015, that he supplemented this log on March 25 and May 6, 2015, and that he re-did the log at the government's request on May 21, 2015. Balogh Decl. ¶¶ 28-30.
>
> The government states that it requested further information from Lonich's counsel on August 19, August 27, and October 14, 2015, but that Lonich's counsel did not provide the information sought. Motion at 4-5. The taint team filed the [first privilege] motion, under seal, on December 11, 2015 . . . .

The Court then granted the government's motion "to the extent that it seeks an order that Lonich

---

[6] The Ninth Circuit rejected the individual's attempt to avail himself of an attorney-client privilege specific to him personally, rather than to the company. *Graf*, 610 F.3d at 1164. Such a fact pattern does not present itself in this case.

11

1   meet his burden of privilege . . . ." Docket No. 181 at 8. More than a year after the parties began
2   their privilege discussions, the Court now declines to give Lonich yet another opportunity to meet
3   his burden and hereby GRANTS the government's motion to release Documents 62-64, 66-67,
4   and 69-70 to the trial team.

###    C.    Capacity as Legal Advisor (Document 105)

Lonich has the burden to prove that he was acting in his capacity as a legal advisor with respect to the communications in question. *See Ruehle*, 583 F.3d at 607-08. Lonich asserts that Document 105 consists of "[e]mails between Alex Kendall and David Lonich regarding a declaration of trust and formation of a company." Motion, Ex. A. The government contends that these documents, "relate to the MFR Investment Fund and Lonich's relationship with the Kendalls and the trust as trustee. There is no mention on any of these documents about Lonich acting as legal counsel with respect to the trust." Motion at 9. Because these documents include communications by Lonich in his role as a trustee instead of as legal advisor, Lonich fails to meet his burden. Accordingly, the Court finds that Document 105 is not privileged.

## II.   Work Product Doctrine (Documents 11, 197, 213, 219)

The work-product doctrine was first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), and is now expressed in Rule 26(b)(3) of the Federal Rules of Civil Procedure. Documents are protected from discovery where they are "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). An attorney's own impressions are protected from discovery. *See Taylor*, 329 U.S. at 508 (work product privilege covers "mental impressions, conclusions, opinions or legal theories"); *Upjohn*, 449 U.S. at 399 ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes."). Lonich asserts that Documents 11, 197, 213, and 219 are protected by the work-product doctrine.

12

### A. Document 11

Lonich states that Document 11 is a "letter [which] confirms the terms and conditions of [his] proposed retention as trustee of MFR Investment trust. Because it is unsigned, it might not have been sent and would then qualify as attorney work product." Motion, Ex. A. In his declaration, Lonich explains that this letter "is a fee agreement with Elizabeth and Alexander Kendall, both for services that I would render as a trustee of the MFR Trust and for legal services." Lonich Decl. ¶ 11. To the extent that Lonich intends to assert an attorney-client privilege over this document, the privilege generally does not apply to fee arrangements. *See Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995). Further, it does not appear that the document was prepared in anticipation of litigation and thus does not qualify for protection under the work-product doctrine. *See Taylor*, 329 U.S. at 508.

### B. Document 197

The privilege log lists Document 197 as an "[a]ttorney work product memorandum regarding transactions involving condominiums acquired by 101 Houseco from Elizabeth Madjlessi, Michael Madjlessi and Alex Kendall." Motion, Ex. A. Lonich declares that this was prepared "with respect to my client, 101 Houseco, and the government's then-ongoing investigation about alleged 'straw buyers.'" Lonich Decl. ¶ 19. Because it was apparently prepared in anticipation of the present criminal case, the Court determines that Document 197 qualifies as protected work product and may not be disclosed to the trial team.

### C. Document 213

Lonich describes Document 213 as a "[d]raft of a Declaration of Trust for MFR Investment Trust, which is attorney work product."[7] Motion, Ex. A. However, Lonich has failed to meet his

---

[7] Lonich points out that in its motion the government identifies this document as both Document 213 and Document 215. Lonich Decl. ¶ 13. The Court will treat this as an inadvertent error and assume that the government referred to Document 213 in both instances. According to the privilege log, Document 215 is no longer in dispute. Motion, Ex. A.

13

burden to establish that Document 213 is covered by the work-product doctrine because he does not show that it was prepared in anticipation of litigation, or that it was created by or for a party to this litigation. *See In re Cal. Pub. Utils. Comm'n,* 892 F.2d 778, 781 (9th Cir. 1989).

### D. Document 219

In the privilege log, Lonich describes Document 219 as an "[a]ttorney work product schedule prepared regarding buyers of condominiums in Reno during 2007, 2008 to be used with respect to investigation/assessment by Chris Wing," whom he notes was Bijan Madjlessi's criminal attorney. Motion, Ex. A; Lonich Decl. ¶ 20. Because Lonich has declared the document to have been prepared in anticipation of the present criminal lawsuit and that it was prepared by Lonich, Madjlessi's personal attorney, for Chris Wing, Madjlessi's criminal attorney, it meets the confidential work-product test and should be protected from disclosure.

Accordingly, the Court finds that Documents 11 and 213 are not confidential attorney work-product and GRANTS the government's motion to release these documents to the trial team. Documents 197 and 219 are work-product and as such the Court DENIES the government's motion to release Documents 197 and 219 to the trial team.

### III. Crime-Fraud Exception to Attorney-Client Privilege (Documents 121, 180, 183-188, 199, 281, 289, 293-295, 301, 303 and 313)

Even if a document is privileged, it may be subject to disclosure under the crime-fraud exception. This exception places the burden on the party opposing the privilege. "To invoke the crime-fraud exception successfully, the government has the burden of making a prima facie showing that the communications were in furtherance of an intended or present illegality and that there is some relationship between the communications and the illegality." *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996) (quoting *In re Grand Jury Proceedings (The Corporation)*, 87 F.3d 377, 380 (9th Cir. 1996)). This involves a two-step process. *Id.* (citing *Zolin*, 491 U.S. at 572). First, the government must submit evidence showing that "there is reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful

scheme . . . ." *Id*. This "may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." *Zolin*, 491 U.S. at 554, 572. "Reasonable cause is more than suspicion but less than a preponderance of evidence." *Chen*, 99 F.3d at 1503. "Mere allegations or suspicion by the government are insufficient." *Id*.

"The government cannot show the otherwise privileged material to the judge unless and until the judge has made this preliminary judgment" regarding reasonable cause. *Id*. Only then may the court decide whether *in camera* review is appropriate. *Id*. at 1502. "[E]ven if the office already has the putatively privileged material, the prosecutor still must go through the two-step procedure of *Zolin*." *Id*. at 1503 (citing *United States v. De La Jara*, 973 F.2d 746, 749 (9th Cir. 1992)).

The government seeks disclosure of Documents 121, 180, 183-188, 199, 281, 289, 293-295, 301, 303 and 313 pursuant to the crime-fraud exception to attorney-client privilege. Motion at 13. The government argues that it has met the first prong of *Zolin*, and thus that it is entitled to the Court's *in camera* review. *Id*. at 14. In response, Lonich asserts that the government has failed to establish the applicability of the crime-fraud exception pursuant to *Zolin* and *Chen* because it "relies on the substance of his privileged communications as a basis to deem [such communication] non-privileged." Opposition at 5. Lonich requests that the Court strike portions of the government's renewed motion because it violates the Court's February 23, 2016 order, which limited the evidence on which the government could rely. *Id*. at 4.

The Court finds that the government has provided sufficient non-privileged evidence to show that "there is reasonable cause to believe" that Lonich's services were used in furtherance of an unlawful scheme. *See Zolin*, 491 U.S. at 554, 572. As evidence, the government points to non-privileged evidence already in possession of the Court: the indictment, J.H.'s guilty plea, and the affidavit to the April 2014 search warrant.

J.H.'s guilty plea, for instance, admitted the following facts: that in early 2009 Bijan Madjlessi and David Lonich approached J.H. "with a scheme to pay me" for carpentry work that J.H. performed for Madjlessi. Motion at 15-16 (citing *United States v. House*, No. 14-cr-329-SI, Dkt. No. 7 ("J.H. Plea")). J.H. admitted that the scheme involved obtaining a loan as 101

15

1   Houseco, LLC from Sonoma Valley Bank in order to purchase a loan from a different bank on
2   which Madjlessi had defaulted and which related to Madjlessi's real estate development called the
3   Park Lane Villas East ("PLV"). *Id*. J.H. agreed to participate in this plan, knowing that he was "a
4   straw owner" of 101 Houseco. *Id*. J.H. admitted that he "understood that the ultimate goal of the
5   scheme was for Madjlessi and Lonich to gain control of PLV and refinance its debts." J.H. Plea
6   ¶ 2. The government's motion goes on to detail additional transactions to which J.H. admitted in
7   his plea agreement. Motion at 16.

8   The government cites to the indictment in this case as evidence that "a federal grand jury
9   found *probable cause to believe* that Lonich and his co-defendants had committed certain crimes."
10  Reply at 2. It also pointed to, among other evidence, the affidavit attached to the search warrant,
11  which Judge Spero determined created "*probable cause to believe* that a search of the subject
12  premises—which included Lonich's residence and office—would reveal fruits, evidence, and
13  instrumentalities of conspiracy to commit wire fraud, conspiracy to commit bank fraud, wire
14  fraud, bank fraud, conspiracy to make false statements to a bank, conspiracy to commit money
15  laundering, money laundering, and attempted obstruction of justice." *Id*.

16  This information provides sufficient basis for the Court to grant *in camera* review of the
17  disputed documents. Although the government may not ultimately be successful in its bid to have
18  the documents fall within the crime-fraud exception, the threshold for *in camera* review is a lower
19  one than what the government will ultimately need to establish that the crime-fraud exception in
20  fact applies. *See Zolin*, 491 U.S. at 572.

21  Lonich has asked that if the Court grants the government's request for *in camera* review,
22  that he be provided an opportunity to respond on this issue. The Court will permit Lonich to file a
23  supplemental brief addressing the applicability of the crime-fraud exception. The Court further
24  agrees with Lonich that Section II.B of the government's motion at times improperly reveals the
25  content of the privileged information in making its crime-fraud argument. In deciding to grant *in*
26  *camera* review, the Court notes that it has not relied on the government's arguments that describe
27  the underlying privileged information.

28

**CONCLUSION**

For the reasons stated above, the Court GRANTS the government's motion with respect to Documents 11, 62-64, 66-67, 69-70, 95, 100-101, 105, and 213. However, given that Lonich has indicated he may bring a separate motion to challenge whether these documents fall within the scope of the search warrant, the government shall not turn over these documents to the trial team until further order of the Court.

The Court DENIES the government's motion as to Documents 2a, 2b, 38, 99, 125, 197, and 219 and ORDERS these documents to be protected from disclosure.

The Court GRANTS the government's motion to review *in camera* the following documents for a determination as to whether the crime-fraud exception applies: Documents 121, 180, 183-188, 199, 281, 289, 293-295, 301, 303 and 313. The government shall lodge these documents with the Court **no later than May 4, 2016**. The parties may each file a brief, not to exceed **10 pages in length**, to discuss the applicability of the crime-fraud exception **no later than May 12, 2016**. The Court will keep the documents under seal to prevent their further disclosure.

**IT IS SO ORDERED**.

Dated: May 2, 2016

SUSAN ILLSTON
United States District Judge