UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAVID LONICH, *et al*.,

Defendants.

Case No.  14-cr-00139-SI-1

**ORDER RE: DEFENDANT LONICH'S MOTION TO SUPPRESS**

Re: Dkt. No. 226

On August 5, 2016, the Court held a hearing on defendant David Lonich's motion to suppress evidence. After consideration of the parties' briefs and arguments at the hearing, the Court enters the following order.

BACKGROUND

The facts of this case are detailed at length in the Court's January 27, 2016 Order re: Motions to Dismiss.  Dkt. No. 162.  For brevity, the Court recites only those facts relevant to the present motion.

On March 18, 2014, the government filed a twenty-nine count indictment against defendants David Lonich, Brian Melland, and Sean Cutting.[1]   Lonich is charged with conspiracy

_____

[1]   Bijan Madjlessi was originally charged in the indictment with the other defendants. Madjlessi died after the indictment and by operation of law all charges against him were dismissed.

to commit wire and bank fraud in violation of 18 U.S.C. § 1349 (Count One), bank fraud in violation of 18 U.S.C. § 1344 (Count Two), wire fraud in violation of 18 U.S.C. § 1343 (Counts Three through Eight), conspiracy to make false statements to a bank in violation of 18 U.S.C. § 371 (Count Nine), conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h) (Count Ten), money laundering in violation of 18 U.S.C. § 1957 (Counts Eleven through Twenty-Two), making false bank entries in violation of 18 U.S.C. § 1005 (Counts Twenty-Four through Twenty-Eight), and attempted obstruction of justice in violation of 18 U.S.C. § 1512 (Count Twenty-Nine).  Madjlessi was a real estate developer, Lonich was Madjlessi's attorney, Cutting was President and CEO of Sonoma Valley Bank until it failed in or about August 2010, and Melland was the Senior Vice President and Chief Loan Officer of Sonoma Valley Bank until March 2010.

The indictment alleges: "No later than approximately March 2009 until approximately September 2012, the defendants devised and executed a material scheme to defraud Sonoma Valley Bank and others and to obtain money from Sonoma Valley Bank and others by means of materially false and fraudulent pretenses, representations, and promises and by omissions and concealment of material facts."  Indictment ¶ 7.

In April 2014, Special Agent Terry M. Neeley of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP") submitted a search warrant application to Chief Magistrate Judge Joseph C. Spero.  Dkt. No. 190-5 (Neeley Decl. ¶ 2).  Neeley's twenty-nine page affidavit, which was provided in support of and incorporated into the search warrant application, described the nature of the investigation and the bases for probable cause.  *See* Dkt. No. 190-1 (Warrant Affidavit).  The affidavit provided:

> I am currently investigating real estate developers identified as Bijan MADJLESSI and David LONICH, and several of their associates, including COOPERATING SOURCE ("CS"), a construction contractor, Brian MELLAND, a banker, Sean CUTTING, a banker, and others. The targets of my investigation are suspected of fraudulently obtaining millions of dollars of loans from the now-defunct Sonoma Valley Bank ("SVB"), previously located in Sonoma, California. . . . The targets are further suspected of using SVB loan proceeds to fraudulently purchase from the FDIC a note relating to a portion of the Park Lane Villas ("PLV"), a multi-purpose residential and commercial development located in Santa Rosa, California. The scheme included seeking to obtain permanent financing from the Federal Home

2

Loan Mortgage Corporation ("Freddie Mac") or the Federal National Mortgage Association ("Fannie Mae").

I submit this affidavit in support of an application for a warrant to search for certain items particularly described in Attachment B, attached hereto and incorporated by reference, which may be present at the offices and residences of MADJLESSI and LONICH, more fully described in Attachment A . . . . There is probable cause to believe that documents related to MADJLESSI's and LONICH's purchase, ownership, and control of PLV are presently located at the subject premises. In addition, as requested below in Section XIII, this affidavit also seeks authorization to search computers, cell phones, and other electronic or digital devices (collectively, "digital devices") located in the subject premises for items described in Attachment B, following the procedures set forth herein and further described in Attachment C, attached hereto and incorporated by reference.

*Id.* ¶¶ 3-4.

Attachment B "ITEMS TO BE SEIZED" of the affidavit to the warrant application identified the following items for seizure:

A.      Evidence of violations of Title 18, United States Code, Sections 371 and 1349 (Conspiracy and Conspiracy to Commit Bank Fraud), Section 1344 (Bank Fraud), Section 656 (Misapplication of Bank Funds), Section 1005 (False Entries), Section 1512(c) (Attempted Obstruction of Justice –Tampering with a witness), Section 1343 (Wire Fraud), Section 1956(h) (Money Laundering Conspiracy) and Section 1957 (Money Laundering Transactions using Specified Unlawful Activity Proceeds), involving any scheme relating to a purchase by 101 Houseco, LLC of an IndyMac loan defaulted on by Bijan MADJLESSI associated with the Park Lane Villas ("PLV"), using funds obtained from Sonoma Valley Bank, any and all efforts to construct, remodel, or purchase any aspect of PLV, including the use of any Sonoma Valley Bank funds or documents, and any and all efforts to obtain funding, financing, or refinancing for any PLV-related activity, including from Terra Capital Partners and Freddie Mac. Such evidence, in physical or electronic form, includes all documents, business records, photographs, audio or video recordings, communications, and any evidence of the ownership, custody, control of, and association with, any of the following:

1.      Sonoma Valley Bank, including information on any legal lending limits to Bijan MADJLESSI or any entity or person associated with him;

2.      Sonoma Valley Bank employees, including Sean Cutting, Brian Melland, Veronica Ordaz, John Barr, Cathleen Gorham, Alexis Thompson, Genevieve Lota, Suzanne Brangham, and Kelly Bruns;

3.      Business entities associated with Bijan MADJLESSI and David LONICH, including 132 Village Square, LLC, 114 Park Lane Santa Rosa, LLC, Masma Construction, Greenbriar Construction, and Menlo Oaks Corporation;

4.      101 Houseco, LLC and any related entities, including the House Family Investment Trust, the Houseco Investment Trust, the Sterling Residence Trust, 103 Star, LLC, Ananda Partners 1 LLC, Ananda Advisors, Annadel Capital, Inc., and 101 Park Lane, LLC;

5.      Terra Capital Partners, and any of its employees or associates, including Adam Kies, Dan Cooperman, and David Packer;

6.    The Debt Exchange ("DebtX") and any of its employees or associates, including Kenneth Daley and Kevin Kelley;

7.    The Federal Deposit Insurance Corporation ("FDIC") and any of its employees or associates;

8.    CBRE and any of its employees or associates;

9.    The formation and control of any companies incorporated or to be incorporated in Panama; and

10.   The following individuals:

• Patricia Brajkovich

• Martel Jed Cooper

• Farhad Hariri

• Derrek Horn

• Phillip Horn

• James House

• Kristina House

• Pamela Hubbard

• Jennifer Irvine

• Elizabeth Madjlessi

• Michael Madjlessi

• Cornelius Oosterbaan

• Eric Reed

• Michael Greg Smith

• Terry Strongin

• William Kelly Vandever

• Michael Zalkaske

• John Carrillo

• Terry Neeley

• Jim Thiede

B.    Evidence of the custody, occupancy, ownership, or control of PLV and any money generated by or associated with it by any party, and any subpart of PLV such as residential or commercial units of PLV, including agreements or documents

4

associated with the purchase, sale, lease-back of apartments, condominiums, or office space located within PLV or associated with PLV or any related loans, and any records relating to any funds generated by or associated with PLV and the disposition of any such funds.

C.      Evidence of any association between and contact among Bijan MADJLESSI, David LONICH, Sean CUTTING, and Brian MELLAND including photographs depicting them or any subset of two or more of them, their presence in any one of their contact lists, whether electronic or otherwise, or communication between them of any variety.

D.      Evidence of custody, occupancy, ownership, or control of any of the locations searched pursuant to this warrant, including documents relating to the rental or ownership of the locations, mail addresses to the locations, identification documents found therein, and any other relevant indicia.

*Id.*

Neeley's affidavit also stated,

Attachment B specifies a number of names and entities that have been identified as having specific relevance to the investigation leading to this warrant. This was done in an effort to provide additional guidance during the execution of the search warrant given the potential privilege issues identified above. The individuals and entities named have come up in a variety of contexts, some as witnesses, some as potentially involved in the scheme described herein, and some as potential victims. Some of the entities and individuals have previously been identified by name in this affidavit, others have been identified by moniker of some sort such as "AVL Subject B," and others have not been previously discussed. In an effort not to unnecessarily reveal all aspects of the investigation or otherwise prejudice any party, some of the individuals are listed below without description of their potential role.

1. Relevant Sonoma Valley Bank former employees include Sean Cutting, Brian Melland, Veronica Ordaz, John Barr, Cathleen Gorham, Alexis Thompson, Genevieve Lota, Suzanne Brangham, and Kelly Bruns;

2. Relevant business entities associated with Bijan MADJLESSI and David LONICH include 132 Village Square, LLC, 114 Park Lane Santa Rosa, LLC, Masma Construction, Greenbriar Construction, and Menlo Oaks Corporation;

3. Relevant entities related to 101 Houseco, LLC include the House Family Investment Trust, the Houseco Investment Trust, the Sterling Residence Trust, 103 Star, LLC, Ananda Partners 1 LLC, Ananda Advisors, Annadel Capital, Inc., and 101 Park Lane, LLC;

4. Relevant Terra Capital Partners employees and associates include Adam Kies, Dan Cooperman, and David Packer;

5. Relevant DebtX employees and associates include Kenneth Daley and Kevin Kelley;

6. CBRE was an entity that assisted Freddie Mac with the refinance obtained by MADJLESSI and LONICH in September 2012 as discussed above;

7. The following individuals were relevant to this investigation either as witnesses, potential victims, or as tangibly involved in the scheme described herein:

• Patricia Brajkovich

• Martel Jed Cooper

• Farhad Hariri

• Derrek Horn

• Phillip Horn

• James House

• Kristina House

• Pamela Hubbard

• Jennifer Irvine

• Elizabeth Madjlessi

• Michael Madjlessi

• Cornelius Oosterbaan

• Eric Reed

• Michael Greg Smith

• Terry Strongin

• William Kelly Vandever

• Michael Zalkaske

8. The following federal government Special Agents participated in this investigation and interview numerous individuals associated with MADJLESSI, LONICH, CUTTING, and MELLAND, including the CS.

• John Carrillo

• Terry Neeley

• Jim Thiede

*Id.* ¶ 95.

Attachment C to the warrant required the Government to purge from its possession all electronic files that fell outside the scope of the warrant's authorized seizures, as follows:

Within a reasonable period of time, but not to exceed 60 calendar days after completing the forensic review of the device or image, the government must use

United States District Court
Northern District of California

1    reasonable efforts to return, delete, or destroy any data outside the scope of the
     warrant unless the government is otherwise permitted by law to retain such data.

2    Dkt. No. 187 Ex. B at USA 3172

3        Because Lonich is an attorney, the search warrant and affidavit set forth a process by

4    which the government formed a "privilege team"[2] to review the seized materials.  Dkt. No. 190-1

5    ¶ 94. The affidavit stated, "[o]ut of an abundance of caution, and given the nature of the requested

6    search which includes the offices and residence of an attorney, all materials seized at the time of

7    the search shall be treated as potentially privileged material and a Privilege Team shall be

8    employed." *Id.*

9        On April 7, 2014, Judge Spero approved the search warrant application.  Dkt. No. 190-5

10   (Neeley Decl. ¶ 2).   The warrant authorized the search of Lonich's residence, Madjlessi's

11   residence, and the three business offices located at Park Lane Villas ("PLV"), 960 Doubles Drive,

12   Unit Nos. 112, 113, and 114.  Dkt. No. 187, Ex. A.  Unit 112 was Lonich's office.  Dkt. No. 187 ¶

13   9.  On April 9, 2014, the government executed the search warrant and seized materials from the

14   two residences and the three offices. Defendant states, and the government does not dispute, that

15   agents seized and carted away for later inspection all electronic client files and many paper client

16   files that defendant maintained in his law office and home.  Dkt. No. 186 at 1.

17       In April 2016, defendant Lonich moved to suppress evidence obtained as a result of the

18   execution of a search warrant.  Dkt. No. 186.  Lonich argued that the government crafted the

19   warrant to permit seizure of all materials related to himself, Madjlessi, any SVB personnel, or

20   many other persons (including Lonich's clients and Lonich's and Madjlessi's employees) with

21   whom they interacted, regardless of any connection or lack thereof to the financing or

22   development of PLV East by 101 Houseco.  *See id.* at 5-18.  Lonich contended that the warrant

23   was overbroad because it authorized the seizure of "all documents" that related to any of the

24   people or entities listed in Attachment B.   Lonich argued that the warrant broadly and

25   impermissibly asserted that there was probable cause to believe that "any and all documents

26   reflecting any mention or communication with any of the entities or persons [listed in Section A of

27

28
     ───────────────
     [2]  The parties have subsequently referred to the "privilege team" as the "taint team."

United States District Court
Northern District of California

United States District Court
Northern District of California

Attachment B of the warrant] constituted *per se* evidence of the alleged 101 Houseco fraud." *Id.*

at 5.  In connection with the motion to suppress, Lonich's attorney filed a declaration stating,

> 4. I state the following on information and belief: from March 2009 up and through April 2014, David Lonich worked as an attorney for a number of individual clients and corporate entities. Mr. Lonich worked as General Counsel for Bijan Madjlessi, and this retention included providing his legal services for the companies that Mr. Madjlessi controlled, as well as for his wife, Biganeh Madjlessi, and the companies that she controlled. These companies included: Petaluma Greenbriar Apartments, LLC; Belvedere, LLC; Sundance Village, LLC; Menlo Oaks Corporation; Masma Construction, Inc.; Greenbriar Construction, Inc.; Prime Vest Realty, Inc.; Greenbriar Realty, Inc.; and 132 Village Square, LLC.

> 5. I state the following on information and belief: during the same time referenced in the previous paragraph, Mr. Lonich represented Belvedere, LLC and Madjlessi in a lawsuit in Reno, Nevada and also represented the Madjlessis and their entities in more than 20 other filed civil cases.

> 6. I am informed and believe that Mr. Lonich also represented other clients between March 2009 and the April 2014 search.

Dkt. No. 187 ¶¶ 4-7.  Lonich's counsel also provided, on information and belief, a description of

who the various individuals listed in Attachment B were, and their relationship to Lonich.  *See*

*e.g., id.* at ¶ 17 ("Farhad ('Farr') Hariri was Bijan Madjlessi's brother-in-law. Attorney Lonich

represented him in multiple matters unrelated to the alleged 101 Houseco fraud.").

In response, the government argued that the warrant did not authorize the seizure of "all"

documents in the manner suggested by defendant.  The government contended,

> As an initial matter, Lonich largely ignores the plain language of the warrant.  First, the various subcategories he challenges are all subsets of the actual "item to be seized" as defined with particularity in the first sentence of Section A of Attachment B.  Specifically, the actual evidence sought to be seized in Section A is "Evidence of violations of [various federal crimes], involving any scheme relating to a purchase by 101 Houseco, LLC of an IndyMac loan defaulted on by Bijan MADJLESSI associated with Park Lane Villas ("PLV"), using funds obtained from Sonoma Valley Bank, any and all efforts to obtain funding, financing, or refinancing for any PLV-related activity, including from Terra Capital Partners and Freddie Mac.

> The warrant then goes on to list examples of such evidence, stating that it "includes all documents, business records, photographs, audio or video recordings, communications, and any evidence of the ownership, custody, control of, or association with, any of the following:" after which a number of names and entities relevant to the investigation are listed.  *Id.*  These subcategories of information are all set forth in Section A following the sentence that specifically and particularly defines "evidence" for the purposes of that portion of the warrant.

Dkt. No. 191 at 3:21-4:6.

8

1    The government argued that Lonich "misread" the warrant when he claimed that it

2   authorized the seizure of all documents having anything to do with any of the listed names and

3   entities.  The government asserted that "the warrant does not authorize the seizure of all

4   documents associated with, for example, Sonoma Valley Bank. Rather, it only authorizes the

5   seizure of 'evidence of the ownership, custody, control of, and association with' Sonoma Valley

6   Bank as it relates to the overall scheme to defraud."  *Id*. at 4:15-17.

7    In an order filed April 15, 2016, the Court denied Lonich's motion to suppress.  The Court

8   agreed with the government that "when read holistically, the warrant validly seeks seizure of

9   'evidence of ownership, custody, control of, and association with' the listed individuals and

10  entities as it relates to the overall scheme to defraud."  Dkt. No. 206 at 8:18-20.

> Defendant's overbreadth arguments are not without force.  In the Court's view, it
> was inartful to use the word "all" in the sentence "Such evidence, in physical or
> electronic form, includes all documents, business records, photographs, audio or
> video recordings, communications, and any evidence of the ownership, custody,
> control of, and association with . . . ." Dkt. No. 190-1 (Warrant Affidavit)
> (emphasis added).  However, the Court agrees with the government that "such
> evidence" relates back to the evidence of the various crimes charged in the
> indictment and recited in the previous sentence, that "all" modifies "documents,"
> and that "and any evidence of the ownership, ownership, custody, control of, and
> association with, any of the following" is a an explanatory limitation on "such
> evidence."  When all its parts are read together, the warrant is not overbroad. The
> warrant commanded the executing officer to seize "[e]vidence of violations [of
> specific sections of Title 18 of the United States Code referencing a description of
> the criminal activities], involving any scheme relating to a purchase by 101
> Houseco, LLC . . . ." *Id*. As described in the attachment to the warrant, the listed
> names of individuals and entities were examples of "[s]uch evidence" and were
> "identified as having specific relevance to the investigation leading to this warrant."
> *Id*.; *cf. United States v. Kow*, 58 F.3d 423, 430 (9th Cir. 1995) (warrant affidavit did
> not provide probable cause to justify generalized seizure of all business documents
> where affidavit acknowledged that defendant business was a legitimate business
> and "[a]lthough [the government's] affidavit established probable cause to seize
> some business records, it did not establish that [defendants' business] was
> 'permeated with fraud,' the type of showing required to justify the wholesale
> seizure of business records that occurred here."). Unlike the warrant in *Kow*, the
> warrant here did not authorize the wholesale seizure of all of defendant's business
> records, but rather authorized the seizure of all evidence related to the overall
> scheme to defraud.

25  *Id*. at 8-9.

26   On July 8, 2016, Lonich filed the current motion to suppress evidence.  Lonich contends

27  that when law enforcement agents executed the search warrant they exceeded the search warrant's

28  scope, as defined by the Court's April 15, 2016 order, by seizing vast amounts of paper and

electronic documents that do not relate to the alleged 101 Houseco fraud.

# DISCUSSION

## I.   Standing

The government first contends that Lonich has not met his burden of establishing a reasonable expectation of privacy as to the areas searched. The government asserts that Lonich "could have likely done so with respect to the searches of his home and his personal office within the Park Lane Villas," but he has not met his burden of establishing a reasonable expectation of privacy in Madjlessi's home or the rest of the office space at the Park Lane Villas, which were also searched. Dkt. No. 230 at 1.

The government does not seriously dispute that Lonich has a reasonable expectation of privacy as to his own home and office, and the Court finds that he does have standing to bring the present motion with regard to the searches of those two areas. Lonich concedes in his reply that he has not established a reasonable expectation of privacy as to Madjlessi's home. Dkt. No. 237 at 3 n.3. Lonich has not made any showing that he had a reasonable expectation of privacy with regard to the other two offices searched at PLV, and the Court finds that Lonich does not have standing to challenge those searches.

## II.   Mootness

The government also asserts that "with respect to the universe of documents held by the privilege review team and not explicitly sought to be disclosed to the trial team through the Court, Lonich's motion is moot as they would not be used by the government in its case-in-chief anyway." Dkt. No. 230 at 2. The government argues that it has thus "effectively self-suppressed the vast majority of the documents" Lonich has identified as being outside the scope of the warrant. *Id.*

Defendant responds that there is no doctrine of "essential mootness," and that his challenge is not moot because defendant seeks compliance with the warrant—which required the government to purge all electronic documents not authorized for seizure—and the Fourth

United States District Court
Northern District of California

Amendment, which forbids the seizure of paper documents outside of the warrant's ambit.

The government does not cite any authority for the proposition that it can "self-suppress" evidence seized pursuant to a search warrant and therefore moot a defendant's challenges to that seizure. The Court agrees with defendant that his challenge is not moot under both the terms of the warrant and the Fourth Amendment.

## III.    Scope of search

Defendant requests that the Court enforce the April 15, 2016 order regarding the scope of the search warrant, and require the government to return, delete or destroy all seized evidence that does not relate to the alleged 101 Houseco fraud. Defendant asserts that the government seized thousands of paper and electronic documents that do not constitute evidence of the alleged 101 Houseco fraud, and therefore were not authorized for seizure. Defense counsel has filed a declaration in which he identifies each document by Bates number. Dkt. No. 227. Defense counsel has also filed a reply declaration in which he states, "I am informed and believe that the evidence contained in Exhibits B and C to ECF No. 227 reflect, *inter alia*, files concerning the development of the Belvedere in Reno, Petaluma Greenbriar apartments, a libel lawsuit brought by Biganeh Madjlessi, lawsuits brought by and against Bijan Madjlessi, Gregg Smith, Jed Cooper, and others unrelated to 101 Houseco, and thousands of other documents that do not constitute evidence of the alleged 101 Houseco fraud." Dkt. No. 238 ¶ 4.

The government contends that defendant has not met his burden to demonstrate that the agents seized evidence outside the scope of the warrant. The government argues that defendant has not provided any evidence or argument showing that the materials were, in fact, outside the scope of the warrant, and that a declaration from counsel "on information and belief" is insufficient under Ninth Circuit case law and the Criminal Local Rules. *See, e.g., Chin Kay v. United States*, 311 F.2d 317, 321 (9th Cir. 1962) ("The burden is on a defendant who seeks to suppress evidence obtained under a regularly issued search warrant to show the want of probable cause."); Criminal Local Rule 47-2(b) ("Motions presenting issues of fact shall be supported by affidavits or declarations which shall comply with the requirements of Civil L.R. 7-5."); Civil

Local Rule 7-5 ("Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record" and "[a]ny statement made upon information or belief must specify the basis therefor."). The government also states that it randomly selected seven examples of the documents on defendant's list and that those examples demonstrate that the evidence was lawfully seized.

Defendant asserts that he has met his burden by specifically identifying each document that he contends was illegally seized, and that the reply declaration of counsel provides further information about why the documents seized were outside the scope of the warrant. Defendant also argues that the government cannot complain that Lonich did not list the subject matters of each of these documents when compiling the exhibits. Defense counsel states,

> Before filing my June 10, 2016 declaration, I broached the issue with AUSA Robert Rees and informed him that I intended to (a) prepare and disclose to the Taint Team the subject matter for each document listed on Exhibits B and C, and (b) prepare and disclose to the Trial Team a redacted version that "disclos[ed] to the Trial Team all non-Houseco documents about which we did not claim as privileged and which were disclosed to the Trial Team[,]" but redacted from the Trial Team the subject matters of privileged documents under the purview of the Taint Team. As I then explained, "[i]n this way, the Trial Team will be able to vet and confirm (or challenge) our designation of documents as non-Houseco fraud documents with respect to non-privileged materials, and the Taint Team can do the same with respect to privileged materials." In response, AUSA Rees objected to this procedure and objected to any redaction of materials from the Trial Team. Rather than fight about it, or risk further litigation on a motion to strike or other complaints about continuing problems caused by the dueling prosecution roles of the Taint Team and the Trial Team, I complied with AUSA Rees's objection, filed everything publicly, and thus omitted from our catalogue of non-Houseco exhibits the information by which Mr. Lonich would have otherwise disclosed to the Trial Team information under the purview of the Taint Team.

Dkt. No. 238 ¶ 4.

The Court finds that on the current record, defendant has not met his burden to show that all of the documents listed in exhibits B and C to the Balogh declaration are outside the scope of the warrant. However, the Court also finds that that defense counsel proposed a method by which defendant could have provided specific facts and argument regarding the documents at issue. While the Court has approved the government's use of a Trial Team and a Taint Team in this case, it also appears that this structure has presented some challenges with regard to litigating the current motion. Because of this complexity, and also because, as discussed *infra*, the Court

disagrees with some of the positions taken by the government in its opposition to the current motion, the Court orders the parties to engage in a meet and confer process as follows: for every seized document that defendant contends is outside the scope of the warrant, defendant may meet his burden by presenting specific facts and arguments to the appropriate government counsel (Trial Team for non-privileged documents, Taint Team for privileged documents). If appropriate, defendant may group documents into categories, such as "documents related to [non-Houseco 101] lawsuit" or "emails related to [non-Houseco] project." The government shall respond to defendant's showing, and if the parties are unable to resolve their disputes, the parties shall notify the Court in a letter that also proposes a process for resolving the remaining dispute (*e.g.*, by noticed motion, joint letter brief etc.).

In order to provide the parties with guidance during the meet and confer process, the Court addresses the parties' arguments with regard to the scope of the warrant and the seven examples selected by the government. "When the defendant challenges the manner in which a search was conducted, we examine the language of the search warrant and ask whether 'a reasonable officer [would] have interpreted the warrant to permit the search at issue.'" *United States v. Johnston*, 789 F.3d 934, 941 (9th Cir. 2015) (quoting *United States v. Gorman*, 104 F.3d 272, 274 (9th Cir. 1996)). Here, as the government previously argued to this Court and as the Court held in its April 15, 2016 order, the language of the warrant authorized the executing officers to seize "[e]vidence of violations [of specific sections of Title 18 of the United States Code referencing a description of the criminal activities], involving any scheme relating to a purchase by 101 Houseco, LLC . . . ." *Id.* The names of individuals and entities listed in Attachment B were examples of "[s]uch evidence."

The government contends,

> Lonich's claim that the seized documents must only relate to the 101 Houseco fraud or they must be suppressed is legally incorrect. *See, e.g.*, Def. Mot. at 3 (seeking "to limit the Government's evidence to the authorized seizure of evidence regarding the alleged 101 Houseco fraud"). Even if some of the documents he identifies were not part of the 101 Houseco fraud identified in the warrant, but rather evidence of different, but similar frauds perpetrated by many of the same individuals, the material would still be lawfully subject to seizure as evidence of the defendants' intent to defraud.

United States District Court
Northern District of California

1   Dkt. No. 230 at 4 (citing *Andresen v. Maryland*, 427 U.S. 463, 484 (1976), and *United States v.*

2   *Barnett*, 667 F.2d 835, 843 (9th Cir. 1982)).

3           The Court notes that the government does not assert, at this time, that any of the seized

4   documents actually constitute evidence of different but similar frauds, and thus the Court makes

5   no finding as to whether any particular evidence seized by the government falls into this category.

6   The Court is also skeptical that *Andresen* and *Barnett* support the seizure of evidence unrelated to

7   the alleged 101 Houseco fraud simply if the evidence can be tied to "similar frauds perpetrated by

8   many of the same individuals."  In *Andresen*, the Supreme Court upheld the seizure of evidence of

9   fraud with respect to a certain real estate lot, even though the warrant was limited to a fraud at a

10  different lot in the same subdivision, because the relevance of the documents was apparent on their

11  face.  The Court stated, "when the special investigators secured the search warrants, they had been

12  informed of a number of similar charges against petitioner arising out of Potomac Woods

13  transactions.  And, by reading numerous documents and records supplied by the Lot 13T and other

14  complainants, and by interviewing witnesses, they had become familiar with petitioner's method

15  of operation.  Accordingly, the relevance of documents pertaining specifically to a lot other than

16  Lot 13T, and their admissibility to show the Lot 13T offense, would have been apparent. Lot 13T

17  and the other lot had numerous features in common." *Andresen*, 427 U.S. at 484.  In *Barnett*, the

18  defendant was charged with various crimes related to the attempted manufacture of phencyclidine

19  ("PCP").   The search warrant expressly authorized seizure of, *inter alia*, "instructions for

20  preparation    or    manufacture    of    methaqualone,    methamphetamine,    phencyclidine,

21  dimethyltrayptamine, lysergic acid, amphetamine and cocaine."  *Barnett*, 667 F.2d at 839.  On

22  appeal, the defendant challenged "[t]he fact that the items described in the search warrant included

23  objects which did not directly relate to Barnett's [PCP] transactions with Hensley."  *Id*. at 843.

24  The Ninth Circuit rejected that argument, holding "[t]he government may lawfully seize evidence

25  of other acts if it tends to prove a suspect's intent with respect to criminal activity described in the

26  affidavit in support of the search warrant."  *Id*. (citing *Andresen*, 427 U.S. at 483-84).

27          The Court next examines each of the examples selected by the government, and finds that

28  a reasonable officer would have interpreted the warrant to permit the seizure of exhibits B and H

United States District Court
Northern District of California

14

to the government's opposition, but that the remaining examples are outside of the scope of the warrant.

### A.    Exhibit B (Box_130-001693)

Exhibit B is the first page of a Bank of America bank record from August of 2007 for an account held in the name of 132 Village Square, LLC. Dkt. No. 230-2.  The government argues that it was reasonable for an executing officer to believe that this record fell within the scope of the warrant because the warrant affidavit describes 132 Village Square, LLC as the entity that obtained the IndyMac loan to construct the East Side of the Park Lane Villas, and it is this loan that Madjlessi defaulted on and that 101 Houseco purchased in the auction.  Defendant argues that the document is outside the scope of the warrant because the indictment alleges that the 101 Houseco fraud took place between March 2009 in September 2012.

The Court agrees with the government that a reasonable executing officer would have believed this record fell within the scope of the warrant.  In addition to the reasons stated by the government, the Court notes that the warrant affidavit states that the IndyMac loan to 132 Village Square, LLC was made on December 20, 2006, and that construction on PLV East continued through 2007.  Dkt. No. 190-1 ¶¶ 9-12.  Under the circumstances, even if the particular bank record is not evidence of the alleged 101 Houseco fraud, a reasonable executing agent would have interpreted the warrant to permit the seizure of this document.

### B.    Exhibit C (SVBSW-CF-OS-0006630)

Exhibit C is an April 2, 2013 email from David Lonich to Kelly Vandever and Terry Strongin, cc'ing Gregg Smith and Jed Cooper, regarding the acquisition of an elevator and an article of a CC&R for the Reno-based Belvedere Tower Owner's Association ("BTOA") meeting agenda. Dkt. No. 230-3.  The text of the email also makes reference to Michael Madjlessi and Menlo Oaks. The government states "Each and every one of those individuals is specifically named in Exhibit B to the search warrant, and the entity Menlo Oaks Corporation is described as a '[b]usiness entit[y] associated with Bijan MADJLESSI and David LONICH' and about which the

United States District Court
Northern District of California

warrant validly sought 'any evidence of the ownership, custody, control of, and association with, any of' those people and that entity.  For example, the fact that these individuals were emailing each other by itself is evidence of their association with each other. Whatever argument Lonich may present in the future about why this document may fall outside the scope of the warrant, it was plainly reasonable for executing officers to seize it."  Dkt. No. 230 at 5-6.

Defendant responds that the government is essentially arguing that the seizure of that document was permitted because the names of those people and that entity were included in the warrant, a construction of the warrant that the government disavowed in the previous briefing. The Court agrees.  There is nothing in the search warrant or affidavit explaining how the listed individuals or entities are connected to the fraud such that seizure of the document is within the scope of the warrant, nor is there anything on the face of this document that suggests a connection to the alleged 101 Houseco fraud.  The government previously argued to this Court that the warrant authorized the seizure of evidence of the ownership, custody, control of, and association with the listed individuals and entities *as that evidence related to the overall scheme to defraud*. The government's current position – that a reasonable officer would have interpreted the warrant to authorize the seizure of this document because it contained the names of listed individuals and because Menlo Oaks Corporation is a business entity connected to Lonich and Bijan Madjlessi – is at odds with the government's previous position.

The government relies on *United States v. Adjani*, 452 F.3d 1140, 1150 (9th Cir. 2006), for the proposition that Exhibit C was within the scope of the warrant because it is an e-mail that shows listed individuals communicating with each other.  However, *Adjani* is distinguishable in numerous respects.  In *Adjani*, the defendants (Adjani and his girlfriend, Reinhold) were charged in an extortion scheme involving Adjani's former employer, Paycom (formerly Epoch).  The search warrant and supporting affidavit stated that Adjani had sent extortion letters to three Paycom partners, Christopher Mallick, Clay Andrews, Joel Hall.  The search warrant authorized the seizure of "[r]ecords, documents and materials which reflect communications with Christopher Mallick, Clay Andrews, Joel Hall, or other employees or officers of Paycom or Epoch."  *Id*. at 1143.  During the search of Adjani and Reinhold's residence, agents seized e-mails between

16

Adjani and Reinhold referring to the extortion plot, and specifically referring to communications with Joel Hall. *Id.* at 1150 n.8. The defendants challenged the seizure of these e-mails as outside the scope of the warrant. The Ninth Circuit rejected that argument,

> The three seized emails the government seeks to admit clearly fall within the scope of paragraph 5h of the warrant affidavit, authorizing seizure of '[r]ecords, documents and materials which reflect communications with Christopher Mallick, Clay Andrews, Joel Hall or other employees or officers of Paycom or Epoch,' which are relevant evidence of violations of 18 U.S.C. § 875(d). Each email specifically refers to communication with Joel Hall or one of the stated companies (identifying them by name). . . . The government already had the emails sent between the victims of the extortion and Adjani-obtained from the victims themselves. The purpose of the warrant was to obtain further and corroborating evidence of the extortion scheme and Adjani's criminal intent in communicating with the victims, and the three emails plainly "reflect" the relevant communications specified in paragraph 5h.

*Id.* at 1150.

Here, in contrast, aside from being listed on Attachment B, there is no information in the search warrant or affidavit to indicate the potential relevance of an e-mail from David Lonich to Kelly Vandever and Terry Strongin, cc'ing Gregg Smith and Jed Cooper, regarding an elevator and an article of a CC&R for the Belvedere Tower Owner's Association. The Court finds that this email is outside the scope of the warrant and that there is nothing on the face of this document that would suggest that it is connected to the alleged fraud.

### C.      Exhibit D (SVBSW-CF-OS-0002721)

Exhibit D is an unsigned signature sheet from an option agreement between Secured Assets Belvedere Tower, a real estate venture to acquire condominiums in Reno, Nevada. Dkt. No. 230-5. The sheet includes signature lines for "David Lonich," "M. Gregory Smith," and "M. Jed Cooper," the first identified as an "Authorized Representative," the latter two as "Managing Member[s]." The document also refers to Ananda Partners II and III along with Ananda Advisors, LLC.

The government argues that "[a]ll three of those individuals, Ananda Advisors, LLC, and a corporate entity known as Ananda Partners I are explicitly referred to in Attachment B to the warrant, which validly sought 'any evidence of the ownership, custody, control of, and association

with, any of' those listed people and entities." Dkt. No. 230 at 6.  The government asserts that by listing Cooper and Smith as Managing Members of Ananda Advisors, LLC, it provides evidence of their custody and control of it.  However, as the Court noted *supra*, the warrant authorized the seizure of "any evidence of the ownership, custody, control of, and association with," any of the listed people and entities as that evidence related to the overall alleged scheme to defraud.  There is nothing on the face of the document that suggests a connection to the overall alleged scheme to defraud, and the government does not make any such argument.  The Court finds that a reasonable executing agent would not believe – under the construction of the advanced by the government and adopted by this Court – that the warrant authorized the seizure of this document.

**D.      Exhibit E (SVBSW-CF-OS-0008319)**

Exhibit E is an exhibit to a filing in bankruptcy proceedings in the Northern District of California involving Petaluma Greenbriar apartments.  Dkt. No. 230-5.  The document defines the term "Madjlessi" to be "Bijan Madjlessi," the term "Lonich" to be "David Lonich," and the term "Guarantors"  to include "Greg Smith [and] Martel Jed Cooper."  The government asserts that "[e]ach of those individuals are specifically named in the search warrant's Attachment B, which again validly sought 'any evidence of the ownership, custody, control of, and association with, any of' those listed people." Dkt. No. 230 at 6.  The government notes that the document mentions Westamerica Bank as "formerly Sonoma Valley Bank," which was also explicitly named in Attachment B and is at the center of the alleged fraud.  The government contends that "[i]t was eminently reasonable on this record for a law enforcement officer to conclude that this document came within the scope of the warrant as showing clear association between several named individuals and an entity named in the warrant."  *Id*. at 7.[3]

For the same reasons set forth above with regard to Exhibits C and D, the Court is unpersuaded by the government's arguments.

---

[3] The government notes that the document includes two names, "Farr Hariri" and "Fahad Hariri" that are very similar to "Farhad Hariri," another of the individuals named in Attachment B.

United States District Court
Northern District of California

**E.      Exhibit F (SVBSW-CF-OS-0001707)**

Exhibit F is an email chain with the subject line "SABT and GreenLake" that includes two emails from Lonich, with Kelly Vandever included as a recipient in one email and cc'd in another in which Lonich is e-mailing Michele Seibold.  Dkt. No. 230-6.  Ms. Seibold is identified in the e-mail as Senior National Commercial Escrow Officer, Nevada Commercial Manager of First American Title Insurance Company in Henderson, Nevada. The government argues that the email is proof of an association between Lonich and Vandever. For the reasons stated above, the Court finds that a document showing that listed individuals communicated with each other, without more, does not bring the document within the scope of the warrant.

The government also notes that the body of one of the emails refers to a "settlement statement signed by Mr. Vandever," and that the recipient "now should have everything so that the funds can be wired to Mr. Vandever."  The government argues that because Attachment B to the warrant includes documents that show "any and all efforts to obtain funding, financing, or refinancing for any PLV-related activity," even if the funding referenced in the email turned out not to have anything to do with PLV, it would still be objectively reasonable for an officer to conclude that the email came within the scope of the warrant at the time of its seizure.  However, there is nothing on the face of this document that suggests a connection to the alleged fraud or to "any PLV-related activity."  In response to Lonich's e-mail referring to the settlement statement and the wiring of funds, Ms. Seibold responded, "I still need a copy of the operating agreement and breakdown for transfer tax as previously requested.  Thanks!"  *Id.*

The government also notes that in one of the e-mails, Lonich lists his address as "980 Doubles Dr., Suite 111" in "Santa Rosa, CA."  *Id.*  The government states that that address appears to be in the Park Lane Villas and "is very close to the 960 Doubles Drive that was one of the search locations."  Dkt. No. 230 at 7.  The government argues that this e-mail is within the scope of the warrant because Attachment B specifically authorizes the seizure of evidence of "the custody, occupancy, ownership, or control of any of the locations searched pursuant to this warrant."  The Court is unpersuaded by this argument. As the government notes, the address listed in the e-mail is not one of the addresses listed in the warrant. The government does not cite any

case law that would grant agents the authority to seize evidence because the document listed an address "very close" to an address listed in the warrant.

### F.    Exhibit G (SVBSW-CF-OS-0054828)

Exhibit G is an email from Terry Strongin to David Lonich, with Bijan Madjlessi cc'd. Dkt. No. 230-7.  The subject is "Vandever and Montecito Units Owned_Chang.xlsx" and the body of the email states "[h]ere are all of Kelly's units including a 1% cost for turnover, 1% for admin, including legal and misc, 20/mo for sewer and water.  NOI is $132,000 with an expense ratio of 54%." The government asserts this is "clear evidence of association between Lonich and Madjlessi, who were central to the scheme at issue in the warrant and charged as defendants, and Terry Strongin and Kelly Vandever, who were each specifically named in Attachment B to the warrant."  Dkt. No. 230 at 8.  The government also argues that because the warrant included evidence of "any and all efforts to construct, remodel, or purchase any aspect of PLV," even if the units mentioned in the email turned out not have anything to do with the PLV, it would still be objectively reasonable for an officer to conclude that the email came within the scope of the warrant.

Again, for the reasons stated *supra*, this is insufficient to bring the document within the scope of the warrant.  There is nothing on the face of this document connecting it to PLV.  Since Madjlessi and Lonich were real estate developers, the government's interpretation would allow seizure of documents relating to virtually any real estate deal or financing.  The search warrant is not so broad and does not allow such an interpretation.

### G.    Exhibit H (SVBSW-CF-OS-0049770)

Exhibit H is an email from David Lonich to Michael Garcia with the subject "Houseco and SABT."  Dkt. No. 230-8.  The government argues that it was objectively reasonable for an officer to conclude that an email from one of the charged defendants with a subject line naming an entity at the heart of the alleged fraud came within the scope of this warrant. Defendant argues that the document does not address or relates to the alleged fraud, and notes that it was transmitted after

United States District Court
Northern District of California

20

the alleged conspiracy ended.

The Court finds that a reasonable agent would believe this document to come within the scope of the warrant. As a government notes, the warrant sought evidence of fraud committed through 101 Houseco, and the affidavit asserts that 101 Houseco, LLC was set up with the purpose of helping to effectuate the fraud.  An agent would reasonably believe that a document listing "Houseco" would fall within the scope of the search warrant.

## CONCLUSION

For the reasons set forth above, the Court finds that on the current record defendant has not met his burden to suppress all of the documents listed in exhibits B and C to the Balogh declaration. The parties are order to meet and confer as set forth in this order.

**IT IS SO ORDERED**.

Dated: September 2, 2016

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

21