1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

      Plaintiff,

     v.

SEAN CLARK CUTTING,
BRIAN SCOTT MELLAND and
DAVID JOHN LONICH,

      Defendants.

Case No. 14-cr-00139-SI
Case No. 17-cr-00139-SI

**FINAL PRETRIAL SCHEDULING ORDER**

On September 19, 2017, the Court held a final pretrial conference in the above captioned matter, which is set for jury selection beginning October 10, 2017 and jury trial beginning October 23, 2017. All parties were represented by counsel. The following matters were resolved:

1. **Trial schedule:** The parties expect that the case will take 5 weeks to complete. The Court does not hear trials on Fridays (although deliberating juries may continue their deliberations on Fridays). The trial day runs from 8:30 a.m. until 3:30 p.m., with a 15 minute break at 10:00 a.m., a 30 minute break at noon and a 15 minute break at 1:45 p.m., all times approximate. Jury selection will take place on October 10 and 11, 2017, and jury trial will begin on October 23, 2017. The jurors will be sworn in on the first day of trial. The Court will not be in session on November 23, 2017 (Thanksgiving).

2. **Number of jurors and challenges:** There will be a jury of twelve members, plus four alternate jurors. The government shall have six peremptory challenges, the defendants jointly shall have eight peremptory challenges, each defendant shall have one individual peremptory

challenge, and each side shall have two additional peremptory challenges for the alternates.

**3.     Voir dire:**  The jury panel will be given and fill out the previously-approved questionnaire on Tuesday, October 10, 2017.  The parties shall inform the Court by 3 p.m. on October 10, 2017, whether there are any prospective jurors the parties jointly agree can be dismissed for cause.  Voir dire will be conducted starting Wednesday, October 11, 2017 at 8:30 a.m.  The Court will conduct general voir dire.  Counsel for each side shall have up to 30 minutes total to question the panel.  The parties are directed to meet and confer concerning a neutral, non-argumentative statement of the case which can be read to the jury panel at the beginning of the voir dire process; this statement shall be provided to the Court **by Friday, October 6, 2017.**

**4.     Jury instructions:**  The Court received separate proposed jury instructions from the government and from defendants.  The parties are directed to meet and confer to resolve any disputes as to the requested instructions, and to provide the Court **by Friday, October 20, 2017** with a single set of proposed jury instructions that includes:  (1) the agreed-upon standard Ninth Circuit instructions, including any agreed-upon revisions thereto; (2) any agreed-upon additional instructions, including the instructions approved in this order and discussed *infra*; and (3) for any remaining disputed instructions, a statement of the instruction and supporting authority as well as the objections thereto and supporting authority.  The Court will give preliminary substantive instructions if the parties submit a jointly-agreed set of same **by Friday, October 20, 2017**.

**5.     Trial exhibits:**  No later than **Friday, October 20, 2017**, the plaintiff shall submit its trial exhibits, in binders with numbered tabs separating and identifying each exhibit.  The Court shall be provided with three sets (the originals for the file, one set for the Court and one set for the witnesses) and the defendant with one set.

**6.     Notice of government's witnesses and exhibits:**  The government shall provide to defendants, on a rolling basis throughout trial, 48 hours of notice of the witnesses it intends to call,

along with a list of the exhibits (including co-conspirator statements, identified as such) that it intends to seek to introduce for each witness. For the first day of trial, the government shall provide this notice by **noon on October 19, 2017**.

### 7. Motions in limine:[1]

**United States' motions in limine**

    1.    <u>To preclude defendants from asserting "illegal" defenses in front of the jury</u>:

    A.    The first dispute concerns defendants' proposed instruction entitled "Board Ratification." That instruction states:

> In deciding whether any particular loan constitutes a fraud or misapplication of bank funds, you must consider whether the loan was approved by or disclosed to the board of directors or any group to which the board delegated loan authority. Disclosure of pertinent facts concerning a loan to those in control of the bank may indicate that the bank was not deprived of its right to make its own decisions. In determining whether any defendant harbored an intent to defraud with respect to each particular loan, you should consider whether relevant facts regarding the loan were disclosed to the Board of Directors of the bank or to any group to which the board delegated loan authority.

    The government argues that defendants should not be permitted to argue that it is a defense in this case that SVB's Board of Directors may have had knowledge of, consented to, or ratified defendants' conduct. Defendants argue that they are not contending that disclosure to the Board of Directors constitutes a complete defense to bank fraud or misapplication of bank funds, but rather that it is relevant to determining a defendant's intent to defraud.

    The parties cite two Ninth Circuit cases, *United States v. Ripinsky*, 109 F.3d 1436 (9th Cir. 1997), and *United States v. Unruh*, 855 F.2d 1363 (9th Cir. 1987). These cases stand for the proposition that while the board's knowledge, ratification and consent are not per se defenses to bank fraud or misapplication of bank funds, they are evidentiary matters that may be considered as

---

    [1] Defendants have filed joinders or partial joinders in each other's motions in limine. Dkt. Nos. 448, 449 and 455 in 14-cr-139 SI; Dkt. Nos. 52, 53 and 48 in 17-cr-139 SI.

part of the defense that there was no intent to defraud or no willful misapplication. In *Ripinsky*, the court affirmed the district court's refusal to give an instruction that essentially provided that disclosure to bank officers is a complete defense to bank fraud. *Ripinsky* cited *Unruh* for the proposition that it is reversible error to refuse to instruct the jury that it should consider disclosure to bank officials in determining whether any defendant harbored an intent to defraud. Defendants' proposed jury instruction is the same one at issue in *Unruh*. *See Unruh*, 855 F.2d at 1372. The Court therefore finds that defendants' proposed instruction is appropriate.

Accordingly, the Court DENIES the government's motion regarding this instruction/defense and intends to give the defendants' proposed instruction. The Court recognizes the government's concern that the title "Ratification" could confuse the jury, and directs the parties to meet and confer regarding a different title for this instruction.

B.     The second dispute concerns defendant Lonich's instruction regarding "Scope of Authority," which states:

> A corporate entity, like a bank, operates through the conduct of its officers, directors, and employees. In Counts One and Two, the Government alleges that defendant Lonich conspired with two officers of Sonoma Valley Bank, defendants Cutting and Melland, to defraud the bank. For a bank officer to engage in criminal conduct against his employer, he must engage in acts that fall outside the scope of his authority. In the absence of obtaining information that the bank officer is acting outside the scope of his authority, a bank customer may rely on disclosure of facts to the bank officer as disclosure of those same facts to the bank itself. Put another way, to convict defendant Lonich on Counts One and Two, the Government must prove that (1) defendant Cutting and/or Melland acted outside the scope of his respective authority when approving the loans issued to 101 Houseco, LLC, and (2) that defendant Lonich knew and intended that defendant Cutting and/or Melland should act outside the scope of their authority.

As discussed at the hearing, the Court does not intend to give this specific instruction, and thus the motion is GRANTED as framed. However, the Court will consider a revised instruction, and the Court directs the parties to meet and confer and, if the parties are unable to come to agreement, to set forth their positions in the October 20, 2017 set of jury instructions.

4

C.     Other defenses:  The government seeks to preclude defendants from arguing that "if J.H. were the technical owner of 101 Houseco 'on paper,' he cannot, as a matter of law, qualify as a straw borrower," and the government asserts that "a loan to a straw borrower such as J.H. can be fraudulent even if he guarantees the loan and has the financial ability to potentially pay it." Motion at 5 (Dkt. No. 440 in 14-cr-139 SI).  The government relies on *United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977), in which the Ninth Circuit rejected the argument that that "where a borrower is financially able to repay a loan and understands that he is responsible for repayment he cannot be convicted under 18 U.S.C. § 656 [misapplication of bank funds] *even though the bank official is aware that he proposes to simultaneously turn the proceeds over to a third party*." *Id.* at 1339 (emphasis added); *see also United States v. Wolf*, 820 F.2d 1499, 1503 (9th Cir. 1987) ("In *Kennedy*, we found misapplication even though the nominal borrower was willing and able to repay the loan. . . . We stated that a misapplication occurs whenever bank funds are lent under a record that misrepresents a material fact, such as the name of the true borrower or the purpose of the loan.").  The Court agrees with the government that defendants cannot assert as a defense that "a borrower is financially able to repay a loan and understands that he is responsible for repayment . . . even though the bank official is aware that he proposes to simultaneously turn the proceeds over to a third party" to the charges of violating 18 U.S.C. § 656, and to this extent the motion is GRANTED.

However, to the extent the government seeks to preclude defendants from arguing as a factual matter that J.H. and the other alleged straw borrowers were actually bona fide borrowers and thus that there was no bank fraud or misapplication of bank funds, the motion is DENIED without prejudice to specific objections to specific legal arguments.


2.     Summary charts:  The government moves to admit four summary charts into evidence.  The Court DENIES the motion without prejudice to renewal after the government lays an adequate foundation for the admission of the charts into evidence.  Until such time, the charts may be used as demonstrative aids, although not in opening statement.

3.  <u>To preclude defendants from eliciting out of court hearsay statements</u>:   The government seeks to generally preclude defendants from seeking the admission of their own hearsay statements.   In addition, the government identifies one particular document (Exhibit 1854), and states it may seek to introduce unspecified portions of that document but that defendant Cutting should not be permitted to introduce any of his own statements contained in that document.   As the Court stated at the pretrial hearing, the Court will only admit evidence in compliance with the Federal Rules of Evidence.   The government's motion is DENIED without prejudice to specific objections to specific evidence at trial.

**Defendant Cutting's motions**

1.  <u>To compel the government to provide an unredacted copy of Gov't Exhibit 1505 and related documents, and to explain why the document was redacted, and to compel the government to provide missing agents' notes and memos</u>:  In response to defendant's motion, the government states that it has provided the missing agents' notes and memos; at the hearing defendant did not dispute that representation and thus the Court considers that issue to be resolved. With regard to Exhibit 1505, at the hearing counsel stated that the government had provided an explanation for the redaction, but had not provided the underlying emails in which the redaction was supposedly directed.   The government stated that it had provided an unredacted copy of Exhibit 1505, *see also* Rees Decl. Ex. A (Dkt. No. 459 in 14-cr-139 SI); at the hearing defense counsel seemed to suggest that the unredacted copy provided was insufficient because the redacted portion of Exhibit 1505 did not match up with the corresponding portion of the unredacted copy. At the hearing defense counsel also asserted that the issues surrounding the production of Exhibit 1505 (an email from FDI examiner Roberto Chavez to FDIC examiner Stephanie Shaw) indicated that the government had failed to comply with its discovery obligations by failing to obtain and review the bank examiners' emails.   In response, counsel for the government stated that it had just learned on September 18, 2017, that when the FDIC responded to the government's subpoena for documents in this case, the FDIC did not search for or produce responsive internal emails (such as emails to and from FDIC examiners).

As discussed at the hearing, the government is ordered to produce to the defense **no later than September 26, 2017**, all documents, including emails, authored or received by any of the FDIC and DFI employees who participated in SVB bank examinations during the time periods pertinent to this case.[2]  The government shall notify the Court, no later than **September 26, 2017**, that it has complied with this Order.

The government shall also provide to the defense an explanation of the process by which the United States' Attorney's Office searched for, obtained and produced these documents. This explanation shall be sufficiently detailed to allow the defense to validate the government's process.

2.    To preclude the government from introducing evidence or argument that suggests that the jury can convict defendants based on a finding that lending limits were exceeded or that exceeding lending limits is a crime, and to give Cutting's proposed jury instruction regarding lending limits to the jury before trial:  The Court agrees that defendants cannot be convicted based solely on a finding that lending limits were exceeded.  However, exceeding legal lending limits is relevant to intent to defraud and misapplication of bank funds.  *See United States v. Wolf*, 820 F.2d 1499, 1505 (9th Cir. 1987).  The parties have submitted similar competing instructions to address this issue, and the Court intends to give the government's proposed instruction:

> You have heard reference at various times during the trial to the FDIC's and DFI's regulations about legal lending limits. These are civil statutes or regulations which limit the amount that a federally-regulated bank may lend to a borrower or related group of borrowers. Violations of a bank's legal lending limit should not be considered by you as violations of the criminal law. You may consider, however, evidence of violations of a bank's legal lending limit as you would any other evidence in determining whether or not the defendants had the required intent to violate the criminal laws charged in this indictment.

---

[2]  Presumably this production will include additional unredacted copies of Exhibit 1505 and related emails, and thus the Court finds it unnecessary at this time to order any further relief regarding that exhibit.

*See United States v. Stefan*, 784 F.2d 1093, 1099 (11th Cir. 1986).[3]  Accordingly, the motion is DENIED as framed, without prejudice to specific objections to specific arguments and evidence at the time of trial.

   3.     <u>An ORDER precluding the government from introducing evidence or argument that suggests that defendants' alleged offense conduct caused the failure of Sonoma Valley Bank, under Federal Rules of Evidence 401, 402, and 403</u>:  GRANTED in part.  The government may not argue that defendants' offense conduct *caused* the failure of SVB.  However, a defendant's knowledge of risk of loss is relevant to proof of intent to defraud.  *United States v. Molinaro*, 11 F.3d 853, 861 (9th Cir. 1993); *United States v. Rizk*, 660 F.3d 1125, 1135 (9th Cir. 2011).  Thus, the Court will not preclude evidence or argument that defendants' alleged conduct put the bank at risk, nor will the Court exclude from evidence the fact that the bank actually failed (although the amounts of loss to the FDIC and TARP will not come into evidence).  However, the Court agrees with defendants that because the government need not prove causation for any of the charged crimes, the probative value of evidence and arguments about what caused the bank's failure is substantially outweighed by the risk of undue prejudice and a waste of time.

   4.     <u>An order precluding the government from introducing evidence or argument that suggests that Sonoma Valley Bank received funds from the Trouble Asset Relief Program ("TARP") under the Capital Purchase Program and that defendants are responsible for the loss of TARP funds, under Federal Rules of Evidence 401, 402, and 403</u>:  GRANTED.  At the hearing, the government acknowledged that the receipt and loss of TARP funds are of minor relevance to the charges in this case.  The Court finds that even if TARP funds were included in the loans at issue (a factual point disputed by defendants at the hearing), the fact that TARP funds may have gone to Madjlessi is not probative of whether defendants engaged in bank fraud or the other

---

   [3]  Cutting requested that the instruction concerning lending limits be given as a preliminary substantive instruction.  The Court finds that this request is appropriate, and the parties can modify the government's proposed instruction and submit it with the proposed preliminary substantive instructions.

charged crimes. The Court agrees with defendants that reference to receipt or loss of TARP funds would be unduly prejudicial under Rule 403. When presenting testimony or evidence that relates in some way to TARP, such as testimony from a TARP investigator, the parties shall omit reference to TARP.

5.     An order excluding any proposed expert testimony of 16 of the government's "so-called experts," including a) Jeffrey Gerrish, b) Clinton "Doc" Bodine, c) Michael Delune, d) Mark Pinkard, e) Steven Vance, f) William Wilson, g) Stephanie Shaw, h) George Torres, i) Donald Trask, j) Roberto Chavez, k) Paul Fung, l) David Packer, m) John Wilbur, n) Cynthia Spatz, o) Jennifer L. Abbott, and p) David Scott Edmunds:   Defendant seeks to exclude any proposed expert testimony of these individuals on the ground that the government's disclosures did not comply with Federal Rule of Criminal Procedure 16(a)(1)(G). These individuals are DFI and FDIC bank examiners who during the relevant time period reviewed SVB's bank records, took regulatory actions following examinations, and in some cases interacted with defendants.

The government states it does not intend to elicit expert opinions from these individuals, but instead to offer percipient, factual testimony about what they did during the exams, what records they reviewed and why, what conclusions they reached, what regulatory actions were taken etc. Based upon this representation, the Court DENIES the motion without prejudice to specific objections at the time of trial if defendants feel these witnesses are straying beyond the scope of percipient witnesses. *See generally United States v. Riddle*, 103 F.3d 423, 428-49 (5th Cir. 1997).

6.     An order granting Cutting permission to bring certain trial equipment (equipment for internet access, audio-visual equipment, bookshelves, electronic equipment) into the Courthouse during trial:  This motion is unopposed and therefore GRANTED.

7.     Supplemental motion to exclude late-disclosed expert testimony of Robert Blenkinsop:  GRANTED. The Court finds that the supplemental disclosure is untimely and

1   without good cause, and that permitting Blenkinsop to testify about the new and significantly

2   amplified analysis set forth in his supplemental report would be prejudicial to defendants.

3           On April 28, 2016, the Court ordered the government to disclose its experts by February 3,

4   2017. Dkt. No. 222 in 14-cr-139 SI. On February 3, 2017, the government gave notice that it may

5   call Robert Blenkinsop, Special Inspector General for SIGTARP, Senior Forensic Special Agent,

6   to testify as an expert. Rabkin Decl. ¶ 2, Ex. A (Dkt. No. 453-1 & 2). The government's February

7   3, 2017 expert disclosure for Blenkinsop included a memorandum of investigative activity

8   ("MOIA"). The MOIA describes Blenkinsop's efforts to compare electronically-stored emails

9   "associated with" Brian Melland and Sean Cutting with hard-copy documents obtained pursuant to

10  the search of Bijan Madjlessi's residence. *Id*. at USA0006761. The MOIA is 3 pages long, states

11  that Blenkinsop found hard copy versions of Melland's emails that he could not find in digital

12  form, *id.* at USA0006763, and concludes "[a]ssuming the BRIAN MELLAND .pst files described

13  above were an accurate compilation of every email sent from or received at

14  bmelland@sonomavlybnk.com, and the hard copy e-mails are accurate representations of emails

15  sent or received from this email address, it is my opinion that the lack of a digital match to the

16  hard copy emails found at Madjlessi's residence indicates that the digital emails were deleted or

17  otherwise removed." *Id*. There are two attachments to the MOIA, which are spreadsheets totaling

18  5 pages that list 180 emails that were found in hard copy, and whether those emails were also

19  found in digital copy. *Id*. at USA0006764-USA0006768.

20          On September 8, 2017, the government produced a supplemental disclosure attaching a

21  second Blenkinsop MOIA in which he details additional forensic analysis of Melland's emails. *Id*.

22  at ¶ 3, Ex. B at USA0011411–16. Blenkinsop's second MOIA sets forth a more detailed analysis

23  (the MOIA is double the length, at 6 pages) and an augmented comparison of Melland's emails

24  from additional sources, including SVB's email server and an email archive. *See id*. Based on a

25  comparison of emails located in these sources, Blenkinsop concludes that "the presence of e-mail

26  messages located in the 'eVault-Archive', without corresponding copies being found in the

27  'Exchange Server', indicates that e-mail messages were selectively deleted from Brian Melland's

28  e-mail account." *Id*. at USA0011415. Attached to the second MOIA is a spreadsheet

10

documenting 6,313 email messages.

The government argues that there is no prejudice to defendants because the supplemental MOIA contains the same conclusions based on the same methodology as the initial MOIA, the supplemental MOIA was provided 45 days before the October 23, 2017 trial date, and defendants never requested (and the Court never set) another deadline for expert disclosures. The Court finds these arguments unpersuasive. As an initial matter, the supplemental MOIA contains a significantly amplified analysis, as demonstrated by the sheer number of emails discussed in the second MOIA versus the first. Further, the Court set a February 3, 2017 deadline for expert disclosures in order to facilitate the orderly management of this complicated case and to prevent last minute disclosure and productions. This was necessary because, as the docket reflects, on numerous occasions the Court has found that the government's disclosures and production of discovery to be inadequate (and indeed, even at this date the government is in the process of producing additional emails to the defense). If the government wished to supplement the Blenkinsop disclosure, the government should have sought leave of Court to do so. Under the particular circumstances of this case, including the history of discovery, the Court finds that allowing testimony regarding the supplemental MOIA would be unduly prejudicial.[4]

**Defendant Melland's motions**

1. <u>To prevent the United States from introducing J.H.'s plea agreement should he testify at trial</u>: Defendant argues that the government should not be permitted to bolster J.H.'s testimony through the introduction of the plea agreement because the plea agreement contains a "truthfulness" provision. Defendant also argues that the agreement contains hearsay. The Court finds that if J.H. testifies, the plea agreement would be admissible to show bias. As such, the motion is DENIED as framed. However, in the event the plea agreement is admitted into evidence, the Court may give a limiting instruction as appropriate and/or order portions of the

---

[4] It was not clear to the Court whether the supplemental MOIA corrected an error in the first report. To the extent that it did so, Mr. Blenkinsop will be permitted to testify about any such corrections.

United States District Court
Northern District of California

agreement redacted.

2.    An order suppressing all co-conspirator statements:  Defendant states that he needs to know the identities of the co-conspirators, and the balance of the motion sets forth a general statement regarding the law about co-conspirator statements.  The government has agreed to provide a list of co-conspirators by September 26, 2017.  The Court DENIES defendant's motion without prejudice to raising specific objections to specific evidence at trial.

3.    To suppress all Fed. R. Evid. 404(b) evidence:  Defendant states that "virtually all" of the 404(b) evidence listed on the government's disclosure is now part of this case, and that the government has not committed definitively to what, if any, other 404(b) evidence it intends to introduce at trial. At the hearing, the government stated that it was not aware of any particular Rule 404(b) evidence that it intended to seek to admit against defendant Melland, but that general exclusion was not warranted because the parties may disagree about how evidence at trial is characterized.  The Court DENIES defendant's motion without prejudice to raising specific objections to specific evidence at trial.

4.    Impeachment:  Defendant seeks to be allowed to impeach witnesses with prior inconsistent statements.  The motion contains a general statement of the hearsay rule and impeachment, and does not specifically address any particular evidence.  As previously stated, the Court will admit evidence in accordance with the Federal Rules of Evidence.  The motion is DENIED without prejudice to raising specific issues at time of trial.

5.    To suppress all reference to an FDIC enforcement action in which he, through his attorney, made statements relating to the charged offenses.  Defendant Cutting joins in this motion.  Both defendants seek to exclude specific exhibits (Exhibits 2308, 2309, 2323, 2326, 2423) that relate to the FDIC's administrative and civil actions against Melland and Cutting.  At the hearing, the government stated that it did not intend to introduce certain evidence related to

those proceedings, such as the fact that Melland and Cutting have been barred from the banking industry (and the Court finds that such evidence would be irrelevant and unduly prejudicial). However, the parties dispute whether the exhibits at issue are admissible as statements of a party opponent under Federal Rule of Evidence 801(d)(2)(C) and (D) and Federal Rule of Evidence 408(a)(2). Aside from the text of the one letter quoted in Melland's motion (Exhibit 2326), the Court does not have before it any of the other exhibits, nor have the parties provided the Court with the factual context of these exhibits (for example, if Exhibit 2326 was "made in compromise negotiations regarding the claim"). *See United States v. Babajian*, No. CR 07-00755, 2009 WL 412333, at *3 (C.D. Cal. Feb. 17, 2009) (holding a stipulation to resolve a regulatory agency's disciplinary action was a settlement agreement under Rule 408(a)(1) and not a statement made during negotiation under Rule 408(a)(2), and therefore was inadmissible). Accordingly, the Court defers ruling on this issue until the time of trial. The Court instructs the government that prior to seeking to introduce any of the exhibits at issue, the government shall make a proffer as to the admissibility of that exhibit. Further, the Court informs the parties that if any letters from defense counsel to the FDIC are admitted into evidence, the Court will redact the names of the authoring attorneys.

6. **To preclude the admission of three exhibits, 1312, 1545, and 1586,[5] on grounds that their admission would violate his marital communication with his then-wife:** The Court finds that Exhibit 1586, which is an email between Melland's ex-wife and her real estate agent, is not privileged. The Court finds that the other emails, which were between Melland and his then-wife (they have since divorced), and were sent to/from Melland's SVB email, are covered by the marital privilege and may not be introduced as evidence against Melland. *See United States v. Nicholas*, 594 F. Supp. 2d 1116, 1131 (C.D. Cal. 2008) (after Ninth Circuit reversed and held that email sent from the defendant's work server to his wife was protected under marital privilege, district court held that email could not be introduced at trial against the defendant but could

---

[5] The government identified an additional exhibit, Exhibit 1498, which is an email between Melland and his then-wife.

potentially come in as co-conspirator statements against a co-defendant). However, the emails could come in for impeachment if Melland testifies, or against Lonich and Cutting as co-conspirator statements if the government shows those requirements are met. The motion is GRANTED IN PART.

7.  <u>To exclude any expert opinion by Special Agent Robert Blenkinsop</u>: Defendant's motion was filed prior to the government's supplemental disclosure regarding Agent Blenkinsop, and the motion seeks to generally preclude Blenkinsop from offering improper expert testimony. The motion is DENIED without prejudice to specific objections at the time of trial.

8.  <u>Summaries</u>: Defendant moves to exclude any summary evidence until the government establishes an adequate foundation. GRANTED.

9.  <u>Defendant renews his prior motion to dismiss all conspiracy counts as multiplicitous</u>: DENIED as partially moot because the government has now dismissed three of the conspiracy counts; the balance of motion is DENIED without prejudice to renewal after all of the evidence has been presented.

**Defendant Lonich's motions**

1.  <u>An order to show cause why Government counsel should not be held in contempt of court, and even if not, for other relief regarding the Government's non-compliance with this Court's Pretrial Orders, the complex nature of this case, and the Government's discovery practices</u>: DENIED, except as follows: the Court directs the government to provide to defendants, on a rolling basis throughout trial, 48 hours of notice of the witnesses it intends to call, along with a list of the exhibits (including co-conspirator statements) that it intends to seek to introduce for each witness. For the first day of trial, the government shall provide this notice by **noon on October 19, 2017**.

With respect to defendant's request that the government be required to reveal the evidence

14

and theory supporting any charges of material omissions (an issue that is also raised by Lonich's fourth motion in limine), the government has represented that this case is primarily about three categories of lies and misrepresentations, not omissions. The Court expects that the government's evidence and theories at trial will conform to this representation. In the event the government seeks to proceed on a theory of material omissions, the Court will first require an offer of proof outside the presence of the jury.

2. <u>An order excluding the introduction of any alleged co-conspirator statement based on the Government's noncompliance with Local Rule 16-1(c) and this Court's Order</u>: DENIED. However, the government is directed to identify all co-conspirator statements that it will seek to introduce on the 48 hour rolling basis when the government provides information about witnesses.

3. <u>An order excluding all Federal Rule of Evidence 404(b) evidence against Mr. Lonich based on the Government's failure to disclose any such evidence by the court-imposed deadline</u>: On January 12 2017, the Court directed the government to provide summaries of all Rule 404(b) evidence that it intended to offer at trial; the government complied with this order on January, 26 providing summaries for Melland and Cutting but nothing for Lonich. As the government has not identified any Rule 404(b) evidence for Lonich, the motion is GRANTED.

4. <u>An order excluding presentation of "material omissions" evidence until the Government introduces evidence of Mr. Lonich's duty to disclose the evidence alleged to be omitted</u>: GRANTED as discussed in connection with Lonich's first motion in limine.

5. <u>An order excluding and/or limiting any pre-2009 evidence against Lonich until the Government has established that a conspiracy existed at that time and that that Mr. Lonich joined it</u>: DENIED. The Court intends to address this issue through the jury instructions.

6. <u>An order requiring the United States to maintain each of the witnesses presented on</u>

its witness list and not release them from their subpoena unless and until it confers with the defendants to determine if defendants will call any such witness in their case-in-chief: GRANTED.

7.    An order taking judicial notice of or otherwise admitting the Government's catalogue of witness interviews as presented in ECF No. 437-1:  The government attached to its witness list "an index detailing, by Bates range, where law enforcement reports of interviews of potential witnesses may be located in discovery provided to the defendants." ECF No. 437 at 1:22-24.  Defendant requests that the Court take judicial notice of the index and permit defendants to introduce this document during witness examinations, pursuant to FRE 201(b)(2) (judicial notice of facts that are not subject to reasonable dispute), or alternatively that the Court should admit the exhibit pursuant to Fed. R. Evid. 801(d)(2) (statements of a party opponent).  Defendant has not shown that this index, which was prepared by counsel, is admissible or subject to judicial notice, and therefore the motion is DENIED.  Defendant may refresh witnesses' recollections regarding interviews through use of this document or the law enforcement reports.

8.    An order requiring the Government to identify all alleged co-conspirators:  As stated supra, the government has agreed to provide this information to the defense by September 26, 2017.  As such, the motion is GRANTED.

9.    An order excluding all evidence regarding Bijan Madjlessi's real estate project in Reno, Nevada (Belvedere Towers):  The government states it does not intend to introduce evidence regarding the Belvedere Towers project, but that the project may be mentioned in other evidence.  Based upon the government's representation, the motion is DENIED AS MOOT, without prejudice to specific objections to specific evidence.

10.    An order permitting defendants to introduce statements by the Government's representatives as admissions of a party opponent:  DENIED, without prejudice to raising specific

issues at the time of trial.  However, the Court informs the parties that it does not, as a general matter, anticipate that statements made by the prosecution team will be entered into evidence.

11. <u>An order precluding the Government from asserting in voir dire or opening statement or summation that this case involves three schemes where the indictments in fact allege six conspiracies</u>:  The United States dismissed three conspiracies it initially charged (Counts 17, 18 and 31), and thus this motion is DENIED AS MOOT.

12. <u>An order that neither indictment be presented to the petit jury</u>:  The Court will not present the indictments to the jury, and thus this motion is DENIED AS MOOT.

13. <u>An order directing the government to inform its witnesses of each of the Court's pretrial rulings, and to confirm that it has done so before trial</u>:  DENIED.

**IT IS SO ORDERED.**

Dated:  September 21, 2017

SUSAN ILLSTON
United States District Judge