UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID LONICH, *et al.*,<br><br>    Defendants. | Case No. 14-cr-00139-SI-1<br><br>**ORDER GRANTING IN PART RECONSIDERATION OF ORDER DENYING FORFEITURE, GRANTING PRELIMINARY FORFEITURE, AND ORDERING THE GOVERNMENT TO POST NOTICE OF FORFEITURE**<br><br>Re: Dkt. Nos. 725, 726, 727 |
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES HOUSE,<br><br>    Defendant. | Case No. 14-cr-00329-SI-1<br><br>Re: Dkt. Nos. 65, 68<br><br>**ORDER DISMISSING 101 HOUSECO'S PETITION CHALLENGING FORFEITURE** |

On July 20, 2018, the Court held a hearing on 101 Houseco's petition in opposition to the forfeiture of Park Lane Villas East in *United States v. House*, CR 14-329 SI, and on July 31, 2018, the Court held a hearing on the government's motion for reconsideration of the denial of the government's motion for preliminary forfeiture of Park Lane Villas East in *United States v. Lonich*, CR 14-139 SI. For the reasons set forth below, the Court DISMISSES 101 Houseco's petition in *United States v. House*, CR 14-329 SI. The Court also GRANTS IN PART the government's motion for reconsideration in *United States v. Lonich*, CR 14-139 SI, GRANTS preliminary forfeiture, and ORDERS the government to post notice of the forfeiture.

# BACKGROUND[1]

On April 9, 2018, the government sought a preliminary order of forfeiture of Park Lane Villas East and a money judgment of $20,800,000 dollars against defendant David Lonich in *United States v. Lonich*, CR 14-139 SI. Lonich Dkt. No. 707 at 11.[2] While the Lonich Forfeiture Application was pending, the government renewed its application for forfeiture of Park Lane Villas East (or "PLV East") and a money judgment of $12,270,000 against defendant James House in the related criminal case, *United States v. House*, CR 14-329 SI. House Dkt. No. 49 at 10-11. The Court held a joint hearing on the government's applications on June 1, 2018. Lonich Dkt. No. 724; House Dkt. No. 55. The Court subsequently issued an order denying forfeiture against Lonich and an order granting forfeiture against House. Lonich Dkt. No. 725, Order Denying Lonich Forfeiture; House Dkt. No. 56, Order Granting House Forfeiture.

On June 29, 2018, 101 Houseco, LLC petitioned the Court to vacate the Order Granting House Forfeiture. House Dkt. No. 65. The government opposed the petition and simultaneously requested reconsideration of the Order Denying Lonich Forfeiture. House Dkt. No. 68, Opp'n & Recons. Mot.; *see also* Lonich Dkt. No. 726. Lonich did not file a response to the government's reconsideration motion, but instead filed a motion to strike the government's reconsideration motion. Lonich Dkt. No. 727, Mot. to Strike. The government opposed Lonich's motion to strike. Lonich Dkt. No. 728, Opp'n to Mot. to Strike.

# LEGAL STANDARD

District courts have "the inherent procedural power to reconsider, rescind, or modify an interlocutory order" before entry of final judgment. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001); *see also* Fed. R. Civ. P. 52(b) (providing

---

[1] The Court incorporates by reference the Court's Order Denying Defendants' Post-Trial Motions (Dkt. No. 713 in the Lonich Dkt.), which sets forth the background regarding the trial and Lonich's convictions for conspiracy to commit bank fraud, bank fraud, conspiracy to commit wire fraud, wire fraud, money laundering, false bank entries, and obstruction of justice.

[2] Filings in Case No. 14-cr-00139 are identified as "Lonich Dkt." and filings in Case No. 14-cr-00329 are identified as "House Dkt."

that any findings may be amended up to 28 day after judgment is entered). Reconsideration is appropriate where a party can demonstrate (1) "reasonable diligence in bringing the motion," and (2) "[t]hat . . . a material difference in fact or law exists from that which was presented to the Court . . . that in the exercise of reasonable diligence the party applying for reconsideration did not know," "[t]he emergence of new material facts or a change of law," or "[a] manifest failure by the Court to consider material facts or dispositive legal arguments." Civil L.R. 7-9(b).[3]

The criminal forfeiture statute, 21 U.S.C. § 853, and Federal Rule of Criminal Procedure 32.2 establish the framework for assessing the validity of criminal forfeitures of property. *United States v. Lazarenko*, 575 F. Supp. 2d 1139, 1145 (N.D. Cal. 2008). Section 853 "paints in broad strokes the proper standards and procedures," while Rule 32.2 "sets forth the procedure governing criminal forfeiture in greater detail." *Id.* Once a defendant is convicted, the district court must order the forfeiture of:

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of [21 U.S.C. § 848], the person shall forfeit, in addition to any property described in [21 U.S.C. § 853(a)(1) or (2)], any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

21 U.S.C. § 853(a).

Criminal forfeiture occurs in a two-stage process. *Id.* § 853; Fed. R. Crim. P. 32.2; *see also United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1144-45 (9th Cir. 2011) (describing forfeiture process). In the first stage, "the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus

---

[3] Criminal Local Rule 2-1 provides that "The provisions of the Civil Local Rules of the Court shall apply to criminal actions and proceedings, except where they may be inconsistent with these criminal local rules, the Federal Rules of Criminal Procedure or provisions of law specifically applicable to criminal cases." Civil Local Rule 7-9 is not inconsistent with any of the criminal rules or provisions, and thus the Court applies that rule to the government's motion for reconsideration.

3

between the property and the offense." Fed. R. Crim. P. 32.2(b)(1). This stage is therefore intended to determine whether the property at issue "is subject to forfeiture." *Id.* 32.2(b)(2)(A). Once the government establishes the requisite nexus, "the court orders the forfeiture of the defendant's interest in the property–whatever that interest may be–in the criminal case." Fed. R. Crim. P. 32.2, advisory committee's note to 2000 adoption (emphasis added); *see also id.* ("Subdivision (b)(2) provides that it is not necessary to determine at this stage what interest any defendant might have in the property.").

"If the court [preliminarily] orders the forfeiture of specific property, the government must publish notice of the order and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." Fed. R. Crim. P. 32.2(b)(6)(A). "Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to [21 U.S.C. § 853] may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). "If, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding." Fed. R. Crim. P. 32.2(c)(1).

In the second stage, "the sole legal issue before the court is the ownership interests of the competing parties." *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005) (quoting *United States v. McHan*, 345 F.3d 262, 281 (4th Cir. 2003) (Luttig, J., concurring in part and concurring in the judgment in part)). During this stage, the court must determine the extent of the defendant's interest in the property before finalizing the preliminary order of forfeiture. Fed. R. Crim. P. 32.2(c)(2). Additionally, if a third-party files a petition under 21 U.S.C. § 853(n), the court must "adjudicate the validity of [a petitioner's] alleged interest in the property." 21 U.S.C. § 853(n)(2). The alleged interest is valid if the petitioner establishes by a preponderance of the evidence that either:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the

4

>forfeiture of the property under this section; or
>
>(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

*Id.* § 853(n)(6); *see also United States v. Hooper*, 229 F.3d 818, 821 (9th Cir. 2000). If the court determines that the petitioner met its burden, "the court shall amend the order of forfeiture in accordance with its determination." 21 U.S.C. § 853(n).

**DISCUSSION**

**I. Reconsideration of the Order Denying Forfeiture in *United States v. Lonich*, CR 14-139 SI is Appropriate**

The Court construes the government's filing as a combined motion for leave to file and a motion for reconsideration, and additionally grants the government leave to file the motion for reconsideration as lodged.

Reconsideration is appropriate where a party can demonstrate (1) "reasonable diligence in bringing the motion," and (2) "[t]hat . . . a material difference in fact or law exists from that which was presented to the Court . . . that in the exercise of reasonable diligence the party applying for reconsideration did not know," "[t]he emergence of new material facts or a change of law," or "[a] manifest failure by the Court to consider material facts or dispositive legal arguments." Civil L.R. 7-9(b).

The government explains that reconsideration is necessary for two reasons. First, the accounting filed in the forfeiture proceedings in the *House* case demonstrates that "as recently as May 23, 2018, Lonich was still receiving thousands of dollars in payments from PLV East." Opp'n & Recons. Mot. at 1. Second, reconsideration is necessary "to extinguish [Lonich's] fraudulent controlling interest in 101 Houseco." *Id.* at 8. Lonich countered at the hearing that the government's motion does not raise any new facts meriting reconsideration.

The Court finds that the government exercised reasonable diligence in bringing its motion for reconsideration. *See* Civil L.R. 7-9(b). The government bases the reconsideration motion on the accounting submitted to the government in response to the Court's June 5 Restraining Order.

*See* House Dkt. No. 58 at 3 ¶ 2. The accounting indicates that on May 23, 2018, Lonich received an automatic payment of $2,500 from Park Lane Villas East. Opp'n & Recons. Mot., Attach. A. The accounting was sent to the government on June 26, 2018. Opp'n to Mot. to Strike, Attach. A at 2. Thus, the government requested reconsideration within ten days of discovering that Lonich received direct payments from Park Lane Villas East.

Additionally, the Court finds that reconsideration is appropriate because, *inter alia*, "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought." Civil L.R. 7-9(b)(1).[4] Lonich asserted that he "never had an ownership interest in 101 Houseco, nor in PLV East." Lonich Dkt. No. 714, Lonich Forfeiture Opp'n at 4-9. However, Lonich failed to disclose that he was receiving regular payments from Park Lane Villas East. Opp'n & Recons. Mot., Attach. A ("05/23/18 AP Pymt - David Lonich: auto-pay . . . 2,500.00"). Indeed, Park Lane Villas East paid Lonich $112,500 between June 2017 and May 2018. Opp'n to Mot. to Strike, Attach. A at 4. The government asserted at the hearing that the payments are evidence of Lonich's de facto ownership of PLV East. Lonich counters that receiving payments does not lead to ownership. Rather, according to Lonich, the payments are being made pursuant to an indemnification agreement between 101 Houseco and Lonich for expenses Lonich incurred as an employee of 101 Houseco.

This Court finds that 101 Houseco's payments to Lonich are a benefit Lonich is enjoying as the result of his fraud. Lonich's argument is premised on the notion that 101 Houseco is a legitimate entity. However, as this Court previously recognized, "there was considerable evidence that Lonich and Madjlessi created 101 Houseco, LLC in order to carry out the fraud and the money laundering." Order Denying Lonich Forfeiture at 2. Lonich would not be receiving any indemnification from 101 Houseco but for his work to fraudulently create 101 Houseco and to subsequently obtain Park Lane Villas East.

---

[4] In addition, as set forth in this order, the Court is persuaded by the government's arguments that Lonich has a forfeitable interest in PLV East based upon the extensive evidence at trial that Lonich and Madjlessi created 101 Houseco for the fraudulent purpose of acquiring PLV East, and that Lonich exercised control over 101 Houseco and House.

## II. Park Lane Villas East Is Subject To Forfeiture

This Court must order the forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." 21 U.S.C. § 853(a)(1). "If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A).

Park Lane Villas East constitutes the proceeds of defendants' offenses. As this Court previously recognized, "there was considerable evidence [at trial] that Lonich and Madjlessi created 101 Houseco, LLC in order to carry out the fraud and the money laundering." Order Denying Lonich Forfeiture at 2. Further, "[t]he evidence at trial showed that the loans were obtained by 101 Houseco, LLC, and then payments were made from 101 Houseco, LLC to various entities (such as DebtX, House Construction, and Masma Construction)." *Id.* Finally, the evidence established that Lonich and Madjlessi used the payments from 101 Houseco to obtain the note secured by Park Lane Villas East. Thus, there is a clear nexus between Park Lane Villas East and defendants' offenses, rendering Park Lane Villas East subject to forfeiture.

## III. Defendants Have Forfeitable Interests in Park Lane Villas East

### A. The Alter Ego Doctrine is Applicable

Under California law, "[t]he corporate entity may be disregarded when it is used to evade the law." *H.A.S. Loan Serv. v. McColgan*, 133 P.2d 391, 394 (Cal. 1943). "[W]hen the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538 (2000). "[T]he two requirements for the application of [the alter ego] doctrine are (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Automotriz Del Golfo De California S.A. De C.V. v. Resnick*, 306 P.2d 1, 3

1  (Cal. 1957). Additionally, Ninth Circuit precedent establishes that "[o]wnership is a prerequisite to alter ego liability, and not a mere 'factor' or 'guideline.'" *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003), *amended on denial of reh'g on other grounds by* 335 F.3d 834 (9th Cir. 2003).

The requirements for applying the alter ego doctrine are met in the present case. First, there is a unity of interest such that the separate personalities of 101 Houseco, Lonich, and House never existed. Again, "there was considerable evidence that Lonich and Madjlessi created 101 Houseco, LLC in order to carry out the fraud and the money laundering." Order Denying Lonich Forfeiture at 2. Thus, 101 Houseco's sole purpose at the time of its creation was to perpetrate defendants' fraud to reclaim Park Lane Villas East.

Nor is 101 Houseco's ownership distinguishable from Lonich, House, and Madjlessi. The evidence presented at trial demonstrated that Lonich and Madjlessi installed House as an 80.1% owner of 101 Houseco while Lonich and Madjlessi also retained control over 101 Houseco. Between 101 Houseco's creation in March 2009 and March 2011, House "managed" 101 Houseco and 101 Houseco's members were entities "controlled" by House. Lonich Forfeiture Opp'n at 2. Sometime after March 2011 and before September 2012, "Lonich was appointed the manager of [101 Houseco] with a 1% percentage interest in [101 Houseco] and the manager of Park Lane." Lonich Dkt. No. 715, Lonich Decl. Opposing Forfeiture, Ex. O at 1. While Lonich "withdrew as the manager of [101 Houseco] and of Park Lane and relinquished his 1% percentage interest" before September 6, 2012, 101 Houseco had already taken control over the entirety of Park Lane Villas East by that time. *Id.*, Ex. O at 1-2 ("As of the Effective Date, [101 Houseco] owns 100 residential condominiums and 14 commercial condominiums . . . ."). Thus, Lonich and House both held an ownership interest in 101 Houseco during the relevant time frame, and nothing separated the personality of 101 Houseco from Lonich, House, and Madjlessi.

Under the second requirement, there will be an inequitable result if the defendants' offenses are treated as those of the corporation alone. The overwhelming evidence presented at trial established that Lonich and Madjlessi created 101 Houseco to perpetrate a fraud. Recognizing "the separate existence of [101 Houseco] would sanction a fraud and permit . . .

8

injustice." *Marr v. Postal Union Life Ins. Co.*, 105 P.2d 649, 656 (Cal. 1940).

### B. David Lonich Obtained a Forfeitable Interest in Park Lane Villas East

A person convicted of a violation must forfeit "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." 21 U.S.C. § 853(a)(1). The government argues that "defendant David Lonich successfully acquired the mortgage note from the FDIC that was secured by all but eleven of the residential units within Park Lane Villas East and thereby unlawfully gained control over those properties." Lonich Forfeiture Appl. at 4. The government adds that "defendant Lonich thereafter committed additional wire fraud . . . to obtain financing for the acquisition of the remaining 11 residential units not secured by the FDIC's note." *Id.* Lonich asserts that "nothing in [the documentary record] provides Mr. Lonich any ownership interest in 101 House [sic] or with respect to PLV East." Lonich Forfeiture Opp'n at 4-5. Thus, Lonich argues, he could never have obtained any part of 101 Houseco or Park Lane Villas East. *Id.* at 6.

However, California law recognizes that a party can obtain property through possession and without legal title. "The concept of ownership refers not to a single right, but a collection of legal rights to use and enjoy property. There are several indicia of ownership. Title is one. Possession is another. The rights to transfer and to exercise control over property are also indicia of ownership." *Hoffman v. Connell*, 73 Cal. App. 4th 1194, 1200 (1999) (citations omitted). The Supreme Court recognizes this concept as well.

> At the time Congress enacted § 853(a)(1), the verb "obtain" was defined as "*to come into possession of*" or to "get or acquire." Random House Dictionary of the English Language 995 (1966); *see also* 7 Oxford English Dictionary 37 (1933) (defining "obtain" as "*[t]o come into the possession* or enjoyment of (something) by one's own effort, or by request; to procure or gain, as the result of purpose and effort"). That definition persists today. *See* Black's Law Dictionary 1247 (10th ed. 2014) (defining "obtain" as "*[t]o bring into one's own possession*; to procure, esp. through effort").

*Honeycutt v. United States*, 137 S. Ct. 1626, 1632 (2017) (emphasis added).

When § 853(a)(1) was enacted, "possession" was defined as "the act or condition of having in or taking into one's control or holding at one's disposal." Webster's Third New International

9

Dictionary 1770 (1961); *see also* Black's Law Dictionary 1325 (rev'd 4th ed. 1968) (defining "possession" as "[t]he detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place and name."). The same holds true today. *See* Merriam-Webster's Collegiate Dictionary 968 (11th ed. 2003) ("a: the act of having or taking into control"; "b: control or occupancy of property without regard to ownership"); *see also* Black's Law Dictionary 1351 (10th ed. 2014) ("The fact of having or holding property in one's power; the exercise of dominion over property.").

Thus, Lonich's reliance on *Honeycutt* is misplaced. While Lonich insists that he never "obtained" 101 Houseco or Park Lane Villas East, his ownership of Park Lane Villas East is reflected by his control over the property. The evidence at trial showed that Lonich and Madjlessi created 101 Houseco to obtain Park Lane Villas East between March 2009 and September 2012. During this time, Lonich and Madjlessi controlled 101 Houseco through House. Thus, Lonich maintained an ownership interest in Park Lane Villas East through House as well.

Furthermore, Lonich held at least a "1% percentage interest" in 101 Houseco on paper between March 2011 and September 2012, which was the time in which defendants used 101 Houseco to obtain Park Lane Villas East. *Compare* Lonich Forfeiture Opp'n at 4-5, *with* Lonich Decl. Opposing Forfeiture, Ex. O at 1. Similarly, Lonich still maintains an interest in 101 Houseco as the trustee for 101 Houseco Investment Trust. Lonich Forfeiture Opp'n at 2-3, 5. While Lonich claims that his position as a trustee does not confer any ownership interest in Park Lane Villas East, trustees retain legal title to property owned by the trust. *Allen v. Sutter Cnty. Bd. of Equalization*, 139 Cal. App. 3d, 887, 890 (1983). Further, the Court finds significant the fact that Lonich has continued to receive payments from 101 Houseco. Thus, this Court finds that defendant Lonich possesses a forfeitable interest in Park Lane Villas East.

### C. James House Has a Forfeitable Ownership Interest in Park Lane Villas East

Defendant James House does not challenge the government's request to forfeit Park Lane Villas East through him. However, this Court must still ensure House has a forfeitable interest in

10

the property before it may enter a final order of forfeiture against House. Fed. R. Crim. P. 32.2(c)(2).

The government argues that House has a forfeitable interest in Park Lane Villas East because "the property is legally owned by House." House Dkt. No. 63, June 1, 2018 Hr'g Tr. at 13. The evidence presented at trial established that House was an 80.1% owner of 101 Houseco when that entity was created and when 101 Houseco acquired PLV East. Trial Ex. 876 at 4. 101 Houseco responds that "the evidence is unequivocal that House never 'actually acquired' or 'owned' PLV East." Pet. at 4. Petitioner relies upon House's testimony that 101 Houseco and Park Lane Villas East was really owned and controlled by Lonich and Madjlessi at all times. *Id.* at 4-6. Petitioner also claims that "House's fictional, paper ownership of 101 Houseco was extremely short-lived." *Id.* at 5 n.6.

The Court does not find any tension between the government's arguments at trial and the government's current arguments in support of forfeiture of Park Lane Villas East from House. As previously discussed, "[t]here are several indicia of ownership. Title is one. Possession is another." *Hoffman*, 73 Cal. App. 4th at 1200. Thus, House may hold title to 101 Houseco and Park Lane Villas East while Lonich and Madjlessi controlled and possessed the same property.

Petitioner argues that under the alter ego doctrine, "the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations *actually controlling the corporation*." House Dkt. No. 69, Reply at 4 (quoting *Sonora Diamond*, 83 Cal. App. 4th at 538 (emphasis added in Reply)). Petitioner claims that because House testified that 101 Houseco was truly controlled by Lonich and Madjlessi, House could not have actually controlled 101 Houseco. *Id.* However, petitioner's argument disregards the fact that the only way Lonich and Madjlessi exercised any control over 101 Houseco and Park Lane Villas East was through House. The evidence presented at trial established that neither Lonich nor Madjlessi could have obtained Park Lane Villas East without using House as a straw purchaser to obtain loans or place bids. Nor could Lonich and Madjlessi control Park Lane Villas East without an intermediary, in this case, House. As such, this Court finds that House maintained a degree of control over 101 Houseco and Park Lane Villas East, in conjunction with Lonich and Madjlessi,

11

and used 101 Houseco to obtain Park Lane Villas East and a forfeitable interest in the property.

**IV.    101 Houseco Does Not Have a Valid Interest in Park Lane Villas East**

A petitioner has a valid interest in property subject to forfeiture if the petitioner establishes by a preponderance of the evidence that either:

> (A)    the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B)    the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(n)(6); *see also Hooper*, 229 F.3d at 821. If the court determines that petitioner met its burden, "the court shall amend the order of forfeiture in accordance with its determination." 21 U.S.C. § 853(n)(6).

### A.    Petitioner Never Obtained a Valid Interest in Park Lane Villas East

Petitioner asserts that it "has title to the parcels that constitute PLV East." Pet. at 2. In response, the government argues that "101 Houseco's petition must . . . be denied because it was created by the defendants solely as a vehicle to perpetrate the fraud in this case." Opp'n & Recons. Mot. at 4. Petitioner does not contest that 101 Houseco was created to perpetrate the fraud in this case, and admits that "there was plenty of evidence in the Lonich trial that [101 Houseco] was used for a fraudulent purpose." House Dkt. No. 73, July 20, 2018 Hr'g Tr. at 5; *see also id.* at 6 ("The Court: And the fraud [101 Houseco] perpetrated got the title to [Park Lane Villas East] into [101 Houseco]. Mr. Cline: That may be. And I'm not here to argue that either."). Petitioner provides two replies: first, 101 Houseco is not House's alter ego, Reply at 2-5; and second, "101 Houseco is not a sham entity. It is a real entity that exists to this day, and it owns

property." July 20, 2018 Hr'g Tr. at 5.[5]

As previously explained, it is appropriate to apply the alter ego doctrine in the present case. Consequently, 101 Houseco's ownership of Park Lane Villas East must be attributed to "the persons or organizations actually controlling" 101 Houseco: Lonich, Madjlessi and House. *Sonora Diamond*, 83 Cal. App. 4th at 538. Even if 101 Houseco currently "has title to the parcels that constitute PLV East," Pet. at 2, petitioner did not obtain a valid interest in Park Lane Villas East "at the time of the commission of the acts which gave rise to the forfeiture of the property under [21 U.S.C. § 853]." *See* 21 U.S.C. § 853(n)(6)(A); *see also* 21 U.S.C. § 853(c) ("All right, title, and interest in property described in subsection (a) of this section vests in the United States

---

[5] The record in this case regarding the "ownership" of 101 Houseco throughout its history to the present is murky at best. As the government noted in its motion for forfeiture:

> From the original formation of 101 Houseco, LLC by Defendant Lonich in March 2009, numerous members and managers have been appointed, fired and replaced by and through multiple fraudulent and misleading corporate documents. Some of these documents, signed on or near the same date, directly contradict each other and directly contradict representations made to others (*e.g*., Terra Capital and Freddie Mac) about who owns and controls 101 Houseco, LLC. *See, e.g*., Trial Exhibits 1830 and 1831 (James House resigns as Manager of 101 Houseco, 101 Park Lane and as Trustee for Houseco Investment Trust and appoints David Lonich over all three entities); *See* Trial Exhibit 2228 (Park Lane Villas Management removed as Manager of 101 Park Lane, LLC and Defendant Lonich appointed as Manager). The only consistent theme throughout all of the misleading and fraudulent corporate documents transferring ownership interests in 101 Houseco, LLC, is that Defendant Lonich was the person responsible for selecting and appointing who will serve as the member or manager of the company. *See, e,g*., Trial Exhibit 0735 (101 Park Lane, LLC and 101 Houseco, LLC operating agreements, providing Sixells, LLC, a corporation owned and controlled by Defendant Lonich, control over any quorum of the company); trial testimony of James House, November 7, 2017, page 125 (Sixells is a corporation associated with David Lonich); *See* Trial Transcript of attorney David Packer, November 15, 2017( page 81) (there were no limitations on who Defendant Lonich could appoint as the owner of 101 Houseco, LLC).

Dkt. No. 707 at 5-6 in Lonich Dkt.
Further, counsel for 101 Houseco has also been unable or unwilling to clearly identify who presently owns 101 Houseco. *See* House Dkt. No. 73, July 20, 2018 Hr'g Tr. at 24 ("The Court: Who owns 101 Houseco now? Mr. Cline: There are at least two LLCs that own it. I think 114 Park Lane is one of them and Ananda Partners I, LLC, is the other. The Court: Who owns Ananda? Mr. Cline: Ananda, I believe, is owned by – there are a number of investors. I think it's owned by Ananda Advisers. I can't tell you for sure.") (emphasis added).

13

*upon the commission of the act giving rise to forfeiture* under this section.") (emphasis added); *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005) ("The title to the forfeited property vests in the United States at the time the defendant commits the unlawful acts . . . .") (citing 21 U.S.C. § 853(c)).

Additionally, petitioner's argument that 101 Houseco "is a real entity that exists to this day" is not persuasive. While 101 Houseco may be "a real California Limited Liability Company," July 20, 2018 Hr'g Tr. at 4-55, that does not change the fact that 101 Houseco was an alter ego. As discussed above, Lonich and Madjlessi controlled 101 Houseco through House until at least September 6, 2012, by which point 101 Houseco had obtained all of Park Lane Villas East. Petitioner's reflection that "Madjlessi is dead[;] Lonich is convicted[; and] 101 Houseco goes on," *id.* at 4, is irrelevant. The question is whether 101 Houseco obtained an interest in Park Lane Villas East at or before "the time of the commission of the acts which gave rise to the forfeiture of the property under [21 U.S.C. § 853]." 21 U.S.C. § 853(n)(6)(A). To the extent that petitioner is asserting that 101 Houseco's interest in Park Lane Villas East was somehow legitimized after Madjlessi and Lonich stopped controlling 101 Houseco, petitioner must establish that it "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under [21 U.S.C. § 853]." *Id.* § 853(n)(6)(B).

### B. Petitioner Cannot Be a Bona Fide Purchaser of Park Lane Villas East

As the government notes, "[p]etitioner in this case did not assert that it was a bona fide purchaser; it relied instead on § 853(n)(6)(A)." Opp'n & Recons. Mot. at 2. However, even if petitioner attempted to claim that it is a bona fide purchaser of Park Lane Villas East, it could not prevail. A petitioner must be able to establish two elements to be a bona fide purchaser: (1) that it purchased for value its asserted right, title, or interest in the property; and (2) that at the time of purchase, it was reasonably without cause to believe that the property was subject to forfeiture under 21 U.S.C. § 853. 21 U.S.C. § 853(n)(6)(B). Petitioner cannot satisfy the second element.

Under California law, "the knowledge of a corporate officer within the scope of his

employment is the knowledge of the corporation." *Meyer v. Glenmoor Homes, Inc.*, 246 Cal. App. 2d 242, 264 (1966). Once a corporation has notice and knowledge, "no subsequent change of officers could take away this notice and knowledge." *Sanfran Co. v. Rees Blow Pipe Mfg. Co.*, 335 P.2d 995, 1003 (Cal. App. 1959) (citing *Mechanics' Bank of Alexandria v. Seton*, 26 U.S. 299, 309 (1828)).

101 Houseco cannot establish that it had no reason to believe that Park Lane Villas East was subject to forfeiture under 21 U.S.C. § 853. Lonich and Madjlessi created 101 Houseco to obtain Park Lane Villas East by fraudulent means. The evidence at trial established that Lonich and Madjlessi installed House as 101 Houseco's 80.1% owner and manager, and House understood that Lonich and Madjlessi planned to obtain Park Lane Villas East by fraudulent means. Consequently, House's knowledge as 101 Houseco's sole officer that Park Lane Villas East was fraudulently obtained is 101 Houseco's knowledge. *See Meyer*, 246 Cal. App. 2d at 264. No subsequent change of officers can take away this knowledge. *Sanfran*, 335 P.2d at 1003. Thus, 101 Houseco cannot assert that it was reasonably without cause to believe that Park Lane Villas East was subject to forfeiture under 21 U.S.C. § 853.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART[6] the government's motion for reconsideration, VACATES the Order Denying Lonich Forfeiture, VACATES the Order Granting House Forfeiture, and DISMISSES 101 Houseco's petition challenging forfeiture of Park Lane Villas East.

IT IS HEREBY ORDERED that the following property is preliminarily forfeited to the United States:

- Real Property located at 3751 Sebastopol Road, Santa Rosa, California, APNs 035-920-001 through 035-920-048, inclusive; 035-930-001 through 035-930-027, inclusive; 035-940-001 through 035-940-026, inclusive; 035-950-001 through 035-950-013, inclusive; and 035-880-008 (commonly referred to as the

---

[6] The Court does not find it appropriate to enter a money judgment of forfeiture against Lonich, and instead only orders that Lonich's interest in PLV East be forfeited.

15

"Park Lane Villas East"), including all interest and appreciation accrued thereon.

IT IS FURTHER ORDERED that the United States, through its appropriate agency, shall publish on www.forfeiture.gov, a government website, the following information for at least 30 days: (1) this Order; (2) notice of the government's intent to dispose of the property in such manner as the Attorney General may direct; and (3) notice that any person, other than the defendant, having or claiming a legal interest in the property, must file a petition with the Court and serve a copy on government counsel, David B. Countryman, Assistant United States Attorney, 450 Golden Gate Avenue, Box 36055, San Francisco, CA 94102, within 30 days of the final publication of notice or of receipt of actual notice, whichever is earlier.

IT IS FURTHER ORDERED that the government may conduct discovery in order to identify, locate, or dispose of property subject to forfeiture in accordance with Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Federal Rule of Criminal Procedure 32.2(e).

IT IS FURTHER ORDERED that, pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, this Order shall become final as to the defendants at the time of sentencing and shall be made part of the sentence and included in the judgment.

**IT IS SO ORDERED**.

Dated: August 1, 2018  _____
SUSAN ILLSTON
United States District Judge