UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> DAVID LONICH, *et al.*, <br> Defendant. | Case Nos. 14-cr-00139-SI-1 <br> 17-cr-00139-SI-1 <br> **ORDER RE: RESTITUTION** |

This matter came on for hearing on September 28, 2018. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the government's request for restitution and ORDERS that each defendant pay restitution in the amount of $19,196,000.00, jointly and severally with the other defendants.

**BACKGROUND**

In its sentencing memorandum, the government asked that defendants be ordered to pay restitution in the amount of $47,836,806.92. Dkt. No. 736 at 17-18.[1] On August 3, 2018, the Court sentenced defendants but deferred ruling on the issue of restitution and specially set a further hearing for September. The Court contacted the parties in advance of the restitution hearing to inquire if the government intended to file supplemental briefing. The government declined and stated that it would stand on the record submitted in its sentencing memorandum. On September 24, 2018, defendant David Lonich filed an objection to the government's restitution request. Dkt. No. 790 ("Lonich Opp'n"). On September 26, defendant Sean Cutting filed an objection and the government

---

[1] All docket citations are to the docket sheet in Case No. 14-cr-139.

filed a reply. Dkt. Nos. 796 ("Cutting Opp'n"), 797 ("Reply"). On September 27, defendant Brian Melland filed a joinder to Cutting's objection. Dkt. No. 801. The Court held a hearing on September 28, 2018.

**LEGAL STANDARD**

The Mandatory Victims Restitution Act of 1996 applies to this case. *See* Dkt. No. 729 ("Lonich PSR") at 12.[2] The Act states, in part, "Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense . . . ." 18 U.S.C. § 3663A(a)(1).

18 U.S.C. § 3664 outlines the procedures for the issuance and enforcement of restitution orders. It states, in part, that the probation officer's presentence report "shall include, to the extent practicable, a complete accounting of the losses to each victim . . . ." 18 U.S.C. § 3664(a). The statute further provides, "Upon the request of the probation officer, but not later than 60 days prior to the date initially set for sentencing, the attorney for the Government, after consulting, to the extent practicable, with all identified victims, shall promptly provide the probation officer with a listing of the amounts subject to restitution." *Id.* § 3664(d)(1). The statute sets the burden of proof as follows:

> Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

*Id.* § 3664(e).

Restitution "to each victim in the full amount of each victim's losses as determined by the court" is mandatory, "without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A). However, the statute gives the court discretion to apportion restitution based on liability where the crime involves more than one defendant. *Id.* § 3664(h) ("If the court finds that

---

[2] Citations in the Presentence Report ("PSR") are to the ECF-generated page numbers.

2

more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.") Moreover, the court may "direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination" or may order only "nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order . . . ." *Id.* § 3664(f)(3). "If the court determines that the defendant is unable to make immediate restitution, the court 'must set a repayment schedule in the judgment of conviction.'" *United States v. Holden*, 897 F.3d 1057, 1066 (9th Cir. 2018) (quoting *Ward v. Chavez*, 678 F.3d 1042, 1049-50 (9th Cir. 2012)).

## DISCUSSION

### I. Amount of Restitution

In its sentencing memo, filed July 27, 2018, the government identified the calculable loss as follows: FDIC loss related to the failure of Sonoma Valley Bank ($10,543,000.00), citing Exhibit 8; FDIC loss related to the fraudulent Madjlessi loans ($28,640,806.92), citing Exhibit 7; and loss to the Troubled Asset Relief Program ("TARP") ($8,653,000.00), citing Exhibit 9. Dkt. No. 736 at 11. The government stated in its memorandum that the $28.6 million figure cited in Exhibit 7 for the FDIC loss "was not available at the time the United States submitted loss calculations to U.S. Probation . . . ." *Id.* at 11 n.1. The government thus sought a total of $47,836,806.92 in restitution.

The PSRs, which the Probation Officer filed on July 19, 2018, recommended that each defendant be ordered to pay restitution in the amount of $20,120,000.00, jointly and severally with the other defendants. *See, e.g.*, Lonich PSR at 12, 26-27, 37. The PSR identified the victims and the corresponding loss amounts as: FDIC ($11,470,000.00) and TARP ($8,650,000.00). *Id.* at 12, 27. The Probation Officer recommended a repayment schedule of not less than $25 per quarter during imprisonment and not less than $5,000 monthly or at least 10 percent of earnings, whichever is greater, to commence no later than 60 days from placement on supervision. *Id.* at 37. The

government raised no objections to the PSR. *Id.* at 29.

The government now relies on Exhibits 7-9 to its sentencing memo to support its claim that the Court should order each defendant to pay restitution of approximately $47.8 million. Reply at 1. Defendants object to the government's restitution request.

Lonich argues that, by citing only to Exhibits 7-9 of its sentencing memo, the government has not met its burden of proof. Lonich Opp'n at 1. Lonich further argues that he cannot be held liable for the losses to the FDIC and TARP because, he says, "the loans from Sonoma Valley Bank ('SVB') which he was involved with—the 101 Houseco, LLC loans—were performing loans, were performing at the time the FDIC shuttered SVB, and neither SVB nor its successors-in-interest, *viz.*, the FDIC and then WestAmerica Bank, lost *any* money from those loans." *Id.* Lonich relies in particular on the government's Exhibit 7, which contains a chart listing $0 in loss for WestAmerica or the FDIC as receiver ("FDIC-R") on the 101 Houseco LLC loans. Lonich contends that he should not be ordered to pay any restitution or that, at most, he should pay only a nominal amount.[3]

Cutting (and, by way of joinder, Melland) argue that the government's request for restitution is procedurally flawed because the amount sought was not disclosed to the Probation Officer and was not shared with defendants until after the PSR was complete, in violation of Criminal Local Rule 32-4.[4] Cutting Opp'n at 2. Cutting also argues the government's request is substantively flawed, stating that "the government has not established . . . any specific loss amount that can be allocated strictly to Mr. Cutting" and that the economic crisis was an intervening cause that "played a factor in the failure of Sonoma Valley Bank . . . ." *Id.* Cutting also argues the FDIC did not incur additional losses "because Westamerica bank purchased SVB's outstanding loans **without a loss-**

---

[3] Lonich also argues in a footnote that the restitution issue must be submitted to a jury and that the indictment should have provided notice of the amounts subject to restitution, but he concedes that current case law does not support this position. *See* Lonich Opp'n at 3 n.5. Cutting and Melland join in these arguments. Cutting Opp'n at 4 n.1; Dkt. Nos. 800, 802.

[4] Criminal Local Rule 32-4 requires that objections to the proposed PSR be made in writing within 14 days after receipt of the proposed PSR. Crim. L.R. 32-4(b); *see also* Commentary to Crim. L.R. 32-4 ("Parties should be aware that the objections not raised to the Probation Officer may not be considered by the Court absent a showing of good cause.").

4

1 **share provision in the purchase agreement**." *Id.* at 5; Stephens Decl., Ex. A. He asks that if the
2 Court orders restitution that it do so on a repayment schedule that does not exceed 10% of Cutting's
3 net income with no monthly minimum, rather than order an immediate lump sum payment. Cutting
4 Opp'n at 5-6. The government argues that Cutting's procedural argument is "meritless" because
5 the restitution statute makes an order of restitution mandatory "[n]otwithstanding any other
6 provision of law" and requires that the court "shall order restitution to each victim in the full amount
7 of each victim's losses as determined by the court and without consideration of the economic
8 circumstances of the defendant." Reply at 2 (quoting 18 U.S.C. §§ 3663A(a)(1), 3664(f)(1)(A)).

As an initial matter, the Court agrees with defendants that the government's request for $47.8 million in restitution is procedurally flawed. Specifically, the government does not appear to have provided Exhibit 7, on which it relies for its claim of $28.6 million in losses to FDIC-R, to the Probation Officer within 60 days prior to sentencing, as required by 18 U.S.C. § 3664(d)(1). Exhibit 7 is dated July 2, 2018. It states that "the total actual loss from the crime committed by the defendants is $28,640,806.92." *See* Dkt. No. 736, Ex. 7 at 1. Cutting states that he first received this exhibit in a document production on July 24, 2018. Dkt. No. 737 at 3. The document itself was not filed with the Court until the filing of the sentencing memos on July 27, 2018. This figure does not appear in the final PSRs, filed on July 19, 2018. *See* Dkt. Nos. 729, 730, 731.

Nor did the government timely object to the restitution amount recommended in the proposed PSRs, as required by Criminal Local Rule 32-4. Cutting has submitted a declaration stating that on March 20, 2018, the Probation Officer disclosed the proposed PSRs, which recommended a restitution order of $20,120,000.00. Stephens Decl. ¶ 2; Cutting Opp'n at 2. Cutting provided written objections to the PSR on April 3, 2018. Stephens Decl. ¶ 3. The government affirmatively stated prior to the filing of the final PSRs that it had no objections. *See, e.g.*, Lonich PSR at 29. The government has provided no explanation for why it did not have the $28.6 million figure sooner or why it did not object to the loss amounts that the Probation Officer identified. The government has only stated, in its sentencing memo, that "[t]his loss figure [the $28.6 million listed in Exhibit 7] was not available at the time the United States submitted loss calculations to U.S. Probation . . . ." *See* Dkt. No. 736 at 11 n.1. In a case that has been pending

for as many years as this case has, the Court sees no reason why the government should be permitted to more than double the restitution request less than two weeks before sentencing.

In addition, the government wrongly seeks to place the burden of proof on defendants. The government argues that the Court should reject defendants' objections because, according to the government, "they have offered no evidence in support of their oppositions to undermine the truth of the losses detailed in the evidence submitted by the government." Reply at 2. Yet it is the government's burden to demonstrate the amount of loss by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e).

The government has provided one letter and two declarations of the amount of loss that it claims. *See* Dkt. No. 736, Ex. 7, 8, 9. The first letter (Exhibit 7) is dated July 2, 2018, from William C. Smith, Specialist with the Division of Resolutions and Receiverships at the FDIC. Mr. Smith attaches a spreadsheet of losses and claims $28.6 million as the "total actual loss from the crime committed by defendants . . . ." *Id.*, Ex. 7 at 1. The letter explains that, as the receiver named when the bank was closed, "[t]he FDIC-R is the only party entitled to restitution for losses suffered by Sonoma [Valley Bank]." *Id.* Exhibit 8 is a declaration from the same William C. Smith, dated July 12, 2018. He states, "As of December 31, 2017, records maintained by the FDIC-R for the Bank indicate that the estimated loss to the DIF [Deposit Insurance Fund] from the Bank's failure is $10.543 million. The loss to the DIF is finalized once the receivership is terminated." *Id.*, Ex. 8 ¶ 6. This declaration contains no attachments or charts to show what comprises this $10.543 million figure. Exhibit 9 is a declaration from Lorenzo Rasetti, Chief Financial Officer for the United States Department of the Treasury Office of Financial Stability, which created TARP. Mr. Rasetti stated that "[b]ecause of Sonoma Valley Bank's closure, Treasury recognized a complete loss of its investment in Sonoma Valley Bancorp in the amount of $8,653,000." *Id.*, Ex. 9 ¶ 10.

Cutting raised concern at the hearing about potential overlap between the two figures the FDIC is claiming, particularly in light of the purchase agreement entered into between FDIC-R, Westamerica Bank, and the FDIC. *See* Stephens Decl., Ex. A. Given the lack of documentation the government has provided to back up these figures, the Court cannot say that Cutting's concerns are unfounded. Exhibits 7 and 8, both from William C. Smith, claim different amounts on behalf of

6

FDIC-R, without clarification as to how these figures interact and with Exhibit 7 claiming that it states "the total actual loss" from the crimes in this case. Although provided the opportunity, the government has given no further documentation or argument in support of its claim for restitution beyond the exhibits that it attached to its sentencing memorandum.

The Court rejects, however, the causation arguments that defendants raise. Both Lonich and Cutting rely on the Supreme Court's decision in *Paroline v. United States*, 572 U.S. 434 (2014), to argue that they should not be held individually liable for any loss caused by others. That reliance is misplaced. *Paroline* "presented the question of how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed." *Paroline*, 572 U.S. at 439. The Supreme Court held that the statute governing restitution to victims of sexual exploitation and other child abuse crimes, 18 U.S.C. § 2259, contained a proximate cause requirement and so the individual defendant, one of likely thousands of possessors of the victim's images, could not be ordered to pay restitution for the full amount of her losses. *Id.* at 440, 448, 456.

Defendants here were convicted of a conspiracy. It is a tenet of conspiracy law (and as the jury was instructed) that "one who willfully joins an existing conspiracy is as responsible for it as the originators. . . ." *See* Dkt. No. 627 at 14. Defendants were convicted of participating in a conspiracy that actually and proximately caused the failure of Sonoma Valley Bank; this failure in turn caused the losses to the victims, in this case the FDIC and TARP. *See United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013) (restitution under the Mandatory Victims Restitution Act "may be awarded only for losses for which the defendant's conduct was an actual *and* proximate cause") (citations omitted). Under the Mandatory Victims Restitution Act, defendants must pay restitution to these victims. The question is in what amount.

Cutting argues in a footnote (and his co-defendants join him in arguing) that the FDIC loss amount should be offset by the $4.8 million civil settlement with the FDIC and defendants Cutting and Melland, as well as by the $5 million the FDIC received from Westamerica. Cutting Opp'n at 5 n.2. This argument is unavailing, where the restitution statute specifies, "In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance

7

or any other source be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B). Although the statute does not anticipate that victims will double recover,[5] the Ninth Circuit has made clear that "the alternative availability of recovery through a civil lawsuit is irrelevant in determining restitution under the MVRA"). *In re Morning Star Packing Co.*, 711 F.3d 1142, 1143 (9th Cir. 2013) (per curiam) (citing 18 U.S.C. § 3664(f)(1)(B); *United States v. Cienfuegos*, 462 F.3d 1160, 1168 (9th Cir. 2006)). As to the $5 million the FDIC received from Westamerica, the Court will not order an offset where defendants have not met their burden of showing they are entitled to an offset and where this amount presumably falls within the $28.6 million of claimed losses that the Court intends to disallow. *See* 18 U.S.C. § 3664(j)(1); *see also* Catherine M. Goodwin, Federal Criminal Restitution § 13:7 (2018) ("The defendant has the burden of proving that the defendant was entitled to any offset against the amount of restitution awarded by the court.") (citing *United States v. Sizemore*, 850 F.3d 821, 828 (6th Cir. 2017)).

Save for the offset question, defendants have not objected specifically to the restitution amounts recommended in the PSRs. However, the government clarified at the hearing that the figures have since been updated. The PSR identified losses to the FDIC of $11,470,000.00 and to TARP of $8,650,000.00. The government now states that these figures are $10,543,000.00 and $8,653,000.00, respectively, as reflected in Exhibits 8 and 9 to the government's sentencing memo.

---

[5] Specifically, subsection (j) of the restitution statute reads:

**(j)(1)** If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

**(2)** Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in- -

**(A)** any Federal civil proceeding; and

**(B)** any State civil proceeding, to the extent provided by the law of the State.

18 U.S.C. § 3664(j).

In light of the procedural concerns in the disclosure of the government's Exhibit 7, the Court will not order restitution for the loss stated in that exhibit. Instead, the Court will order restitution to the victims identified in the PSRs, but in the updated amounts reflected in the government's Exhibits 8 and 9:

| Victim Name | Amount of Loss |
|---|---|
| FDIC | $10,543,000.00 |
| TARP | $8,653,000.00 |
| **Total** | **$19,196,000.00** |

Restitution shall be paid by each defendant jointly and severally with the other defendants.

## II. Payment Schedule

At the hearing, the government stated that it agreed with defendants' request that there not be a minimum monthly restitution payment due upon release from imprisonment. Accordingly, the Court ADOPTS the payment schedule proposed in the Probation Presentence Reports, with the exception that there shall be no monthly minimum payment due on supervised release. That is, the relevant portion of the payment schedule shall read as follows: "Once the defendant is on supervised release, the restitution must be paid in monthly payments of not less than $5,000 or at least 10 percent of earnings, whichever is ~~greater~~ **lesser**, to commence no later than 60 days from placement on supervision."

In addition, the government noted at the hearing that there is a possibility that if any funds remain after restitution and forfeiture are complete, some amount of funds may be available to return to the shareholders, because Sonoma Valley Bancorp was not dissolved. The government requested that the Court order that any interest defendants Cutting and Melland have as shareholders of Sonoma Valley Bancorp be forfeited. The Court finds that such an order is appropriate and so ORDERS that Cutting and Melland's interests in Sonoma Valley Bancorp be forfeited.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby ORDERS the defendants pay restitution in the amount of $19,196,000.00, jointly and severally with each of the other defendants. The Court ADOPTS the payment scheduled proposed in the Probation Presentence Reports, with the exception that the following sentence shall be modified to read: "Once the defendant is on supervised release, the restitution must be paid in monthly payments of not less than $5,000 or at least 10 percent of earnings, whichever is ~~greater~~ **lesser**, to commence no later than 60 days from placement on supervision." The Court further ORDERS that any interest that Cutting and Melland have as shareholders of Sonoma Valley Bancorp be forfeited.

The Probation Officer shall prepare an Amended Judgment.

**IT IS SO ORDERED**.

Dated: October 4, 2018

_____
SUSAN ILLSTON
United States District Judge